**NORTHERN ARAPAHO TRIBE, on its own behalf and on behalf of its members, Plaintiff,**

v.

**Sylvia BURWELL, Secretary of the United States Department of Health & Human Services; and Jacob J. Lew, Secretary of the United States Department of Treasury, Defendants.**

**Case No. 14–CV–247–SWS**

United States District Court, D. Wyoming.

Signed July 2, 2015

See also 90 F.Supp.3d 1238, 2015 WL 872190.

Andrew W. Baldwin, Berthenia S. Crocker, Janet E. Millard, Kelly A. Rudd, Mandi Anne Vuinovich, Baldwin Crocker & Rudd, Lander, WY, for Plaintiff.

Alice S. Lacour, Jacek Pruski, Steven A. Myers, United States Department of Justice, Washington, DC, Nicholas Vassallo, U.S. Attorney's Office, Cheyenne, WY, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [1]

Scott W. Skavdahl, United States District Judge

This matter comes before the Court on the Defendants' Motion to Dismiss (Doc. 26) and supporting brief (Doc. 27). The Northern Arapaho Tribe filed an opposition to the motion (Doc. 38), and Defendant' replied (Doc. 39). Having considered the parties' briefs, the record herein, and being otherwise fully advised, the Court finds and concludes the motion should be granted.

---

1. Much of this Order repeats verbatim the Court's prior Order Denying Preliminary Injunction (Doc. 21). *Northern Arapaho Tribe v. Burwell,* 90 F.Supp.3d 1238, 2015 WL 872190 (D.Wyo. Feb. 26, 2015). The Court repeats much of it here so the reader need not refer to multiple documents, but the reader is encouraged to review the prior order for more information.

## BACKGROUND

This case asks whether the Northern Arapaho Tribe (the "Tribe"), a federally-recognized Indian tribe, is exempted from the "large employer mandate" of the Patient Protection and Affordable Care Act of 2010 (the "ACA"). The large employer mandate is found at 26 U.S.C. § 4980H and, in short, requires a large employer to sponsor a health insurance plan meeting certain minimum requirements for its full-time employees or face an "assessable payment" if it fails to do so. As relevant to this case, § 4980H(c)(2) defines a "large employer" as employing an average of at least 50 full-time employees on business days.

The Tribe operates several economic enterprises on the Wind River Indian Reservation in Wyoming, including a casino, a convenience store, a gas station, a grocery store, and other businesses. The Tribe employs over 900 people in its economic enterprises and governmental agencies. (Conrad Decl. ¶¶ 2, 4.) Nonetheless, the Tribe argues it should not be subject to the large employer mandate.

After the ACA was passed, the Tribe discovered its employees could buy health insurance plans on the federal health insurance exchange that offered superior coverage at a lower price than any other plan previously available in the insurance market. The Tribe encouraged and assisted its members in purchasing individual health insurance plans through the federal exchange, including paying up to 80% of the premiums for its tribal members.

As of January 1, 2015, the ACA's large employer mandate became effective. The Tribe alleges the health insurance plan it would offer as a large employer would be more expensive for its employees and offer less coverage than the individual plans available on the federal exchange. The Tribe believes the individual health insurance plans purchased through the federal exchange are superior to any employer-sponsored insurance plan it could provide under the large employer mandate, primarily because most of the Tribe's members qualify for income-based tax credits and cost-sharing exemptions under the individual plans that would be unavailable within an employer-sponsored plan.

The Tribe has filed this lawsuit against the Secretary of the United States Department of Health and Human Services and the Secretary of the United States Department of Treasury (collectively, "Defendants"). The Tribe seeks to be exempted from the large employer mandate and asserts its members should be permitted to continue to obtain individual health insurance plans on the federal exchange. The Tribe challenges three final regulations (federal tax regulations) promulgated and finalized by the Department of Treasury. The final regulations, discussed in detail later, expressly subject Indian tribes that employ 50 or more full-time employees to the ACA's large employer mandate and its reporting requirements. In short, the Tribe asserts the Department of Treasury erred by including Indian tribes as large employers in these three final regulations.

## DENIAL OF PRELIMINARY INJUNCTION

Shortly after filing suit, the Tribe moved for a preliminary injunction, seeking to be exempted from the large employer mandate during the pendency of the case. (Doc. 8.) Following briefing and oral arguments on the matter, the Court denied the Tribe's request for preliminary injunction for several reasons. (Doc. 21.) The Court concluded "this action is barred by the Anti–Injunction Act and the Tribe's arguments were waived during the rulemaking process." (Doc. 21 at p. 28.) The Court further determined that "[a]ssuming arguendo that those threshold issues did not

preclude the Tribe's motion for preliminary injunction, the Court finds the factors weigh against issuing a preliminary injunction." (*Id.*)

### RELEVANT LAW

The ACA "aims to increase the number of Americans covered by health insurance and decrease the cost of health care." *Nat'l Fed'n of Indep. Bus. v. Sebelius,* ── U.S. ──, 132 S.Ct. 2566, 2580, 183 L.Ed.2d 450 (2012). The ACA was codified in scattered sections of Title 26 and Title 42 of the United States Code. Title 26 is the Internal Revenue Code.

### 1. *The Individual Mandate*

The so-called "individual mandate" became enforceable in 2014 and it requires most individuals to maintain a minimum level of health insurance coverage or be subject to a monetary tax "penalty." 26 U.S.C. § 5000A. Members of Indian tribes, including the members of the Plaintiff Tribe here, are subject to the mandate but nonetheless exempt from any tax penalty. *Id.* § 5000A(d)(1), (e)(3); *Nat'l Fed'n,* 132 S.Ct. at 2580.

To assist with meeting the individual mandate, the ACA provided for the creation of health insurance exchanges whereby individuals can obtain health insurance coverage. 42 U.S.C. §§ 18031–18044. Each plan offered through an exchange must provide a minimum level of coverage, as defined by Congress. *Id.* § 18021. Wyoming opted not to set up its own state exchange. Consequently, qualifying Wyoming citizens may obtain an individual health insurance plan through the federally-facilitated exchange. *See* 42 U.S.C. § 18041(c)(1) (requiring the Department of Health and Human Services to "establish and operate" an exchange within a state that opts out of setting up its own).

The ACA also enacted new tax credits and cost-sharing reductions in an attempt to make health insurance coverage on the exchanges more affordable for low- and middle-income individuals.[2] For taxpayers whose household income is between 100% and 400% of the poverty line, the ACA establishes premium tax credits. 26 U.S.C. § 3B.[3] These premium tax credits are intended to reduce a qualifying tax payer's net cost of insurance, and they are advanceable and refundable so that individuals with little or no income tax liability can still benefit from them. *See* 42 U.S.C. § 18082.

In addition to the premium tax credits, the ACA also provides for federal payments to insurers to help cover certain individuals' cost-sharing expenses for insurance obtained through an exchange. 42 U.S.C. § 18071.[4] These cost-sharing subsidies are intended to reduce a qualifying individual's out-of-pocket expenses, such as deductibles, copayments, and coinsurance. Normally, to qualify for these cost-sharing subsidies, the individual's household income must fall between 100% and 400% of the poverty line. *Id.* § 18071(b)(2), (c)(1)(A). Specific to this case, though, members of an Indian tribe qualify for these cost-sharing subsidies if the member's household income is 300% or less of the poverty line, and under subsection (d)(1)(B), the plan issuer "shall eliminate any cost-sharing under the plan" for the qualifying Indian, which effectively reduces that insured's out-of-pocket expense

---

**2.** The United States Supreme Court recently affirmed that the tax credits are available to those residents of states, like Wyoming, that opted out of running their own insurance exchanges. *King v. Burwell,* ── U.S. ──, 135 S.Ct. 2480, 192 L.Ed.2d 483 (2015).

**3.** Section 1401 of the ACA.

**4.** Section 1402 of the ACA.

to zero. "The ACA eliminates all cost-sharing for Indians under 300 percent of the federal poverty level...." Alex Dyste, Note, *It's Hard Out Here for an American Indian: Implications of the Patient Protection and Affordable Care Act for the American Indian Population,* 32 Law & Ineq. 95, 119 (2014).

These two incentives (premium tax credits and reduced or eliminated cost-sharing) are only available as part of an individual health insurance plan obtained through an exchange. *See* 26 U.S.C. § 36B(c)(2)(B) (premium tax credit is unavailable during months when the individual is eligible for sufficient coverage outside of the exchange market); 42 U.S.C. § 18071(f)(2) (cost-sharing reduction is not allowed during months when the individual does not qualify for a premium tax credit). In short, these two incentives are only available to those obtaining individual health insurance plans through an exchange, and individual plans are only available through an exchange when alternative coverage (e.g., insurance through an employer) is unavailable. Thus the rub in this case.

### 2. *The Large Employer Mandate*

On January 1, 2015, the large employer mandate went into effect. It requires employers with at least 50 full-time employees to offer to their employees a health insurance plan meeting a certain minimum level of coverage. *See* 26 U.S.C. § 4980H. Failure to do so results in the large employer owing "an assessable payment." *Id.* § 4980H(a), (b). The ACA requires applicable large employers to report to the federal government on the health insurance coverage they offer to their full-time employees to determine whether any assessable payment is owed. *See id.* § 6056. State and local governments are likewise

subject to the large employer mandate. *See id.* §§ 6055(d), 6056(e) (addressing the reporting requirements for governmental units or agencies).

### 3. *The Treasury Regulations at Issue*

In implementing the ACA, the Department of Treasury and the Internal Revenue Service (IRS) issued various federal regulations after a notice-and-comment period. *See* 26 U.S.C. § 7805 (providing the Secretary of the Department of Treasury the authority to create necessary rules and regulations for enforcing the Internal Revenue Code).[5] The Tribe takes exception to three final regulations (a/k/a federal tax regulations) promulgated and finalized by the Treasury in this case:

(1) 26 C.F.R § 54.4980H–1, finalized on February 12, 2014, defined "government entity" to include Indian tribal governments;

(2) 26 C.F.R. § 301.6056–1, finalized on March 10, 2014, concerns reporting requirements for large employers and defines "governmental unit," similar to "government entity," to include Indian tribal governments; and

(3) 26 C.F.R. § 1.6055–1, also finalized on March 10, 2014, defines "governmental unit" to include Indian tribal governments.

These final regulations expressly subject Indian tribes that employ 50 or more full-time employees to the ACA's large employer mandate and its reporting requirements. Federal tax regulations provide the official interpretation of the Internal Revenue Code.

5. The IRS is a bureau of the Department of Treasury. It is responsible for collecting taxes and administering the Internal Revenue

Code. For brevity, the Court will refer to the federal regulations at issue here as the Treasury's regulations.

## THE PARTIES' ARGUMENTS

In the years preceding the ACA, the Tribe worked to provide cost-effective health insurance to its employees and tribal members, including through a commercial insurance carrier and a self-insurance system. (Conrad Decl. ¶ 7.) These efforts proved unsuccessful. (*Id.*)

Once the ACA was passed, the Tribe discovered its members could obtain individual health insurance plans through the federal exchange that were superior to the plans the Tribe had been able to offer its members in the preceding years. (*Id.* ¶ 9.) And the Tribe pays about 80% of the cost of the insurance premium for individual plans obtained through the exchange. (*Id.* ¶ 8.) The Tribe asserts that without the reduced cost-sharing and premium tax credits, its Native American employees could not afford to keep health insurance coverage. (*Id.* ¶ 9.)

The Tribe's basic argument is that Congress never intended to subject Indian tribes to the large employer mandate, and the Treasury has erred by including Indian tribes within its definitions. And if the Tribe is subject to the large employer mandate, its Indian employees cannot qualify for the premium tax credits and reduced cost-sharing incentives. According to the Tribe, this will result in its Indian employees paying more for their insurance or, since tribal members are exempt from the individual mandate's tax penalty, the Indian employees will simply forego health insurance altogether.

Defendants argue Congress's intent to include Indian tribes as large employers is clear and unambiguous in the ACA. Accordingly, argue Defendants, the Treasury was within its authority to subject Indian tribes to the large employer mandate.

## THE TRIBE'S REQUESTED RELIEF

The Tribe's express request for relief is limited to declaratory judgment and in-junctive relief. (*See* Doc. 1 at ¶¶ 55, 62, pp. 16–17.) The Tribe asks the Court to declare the large employer mandate unlawful as applied to the Tribe, enjoin Defendants from levying penalties against the Tribe for not complying with the large employer mandate, issue an injunction allowing the Tribe and its members to continue to receive health care coverage through the federal exchange, declare the challenged Treasury regulations invalid as applied to the Tribe and in violation of the Administrative Procedures Act, or alternatively declare that the Tribe members' practice of obtaining health insurance through the federal exchange satisfies the requirements of the large employer mandate. (*Id.* at pp. 16–17.)

## STANDARD OF ANALYSIS

■ Defendants move to dismiss this lawsuit under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction based on the Anti–Injunction Act (AIA). As set forth by the Tenth Circuit in *Holt v. United States*, 46 F.3d 1000 (10th Cir.1995), the standard for a Rule 12(b)(1) motion is as follows:

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. *Id.*

Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id.* When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the com-

plaint's factual allegations. *Id.* A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *Id.*; *Wheeler v. Hurdman,* 825 F.2d 257, 259 n. 5 (10th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion. *Wheeler,* 825 F.2d at 259 n. 5. *Id.* at 1002–03. Further, the plaintiff bears the burden of proof to demonstrate that a court has subject matter jurisdiction over the lawsuit. *Montoya v. Chao,* 296 F.3d 952, 955 (10th Cir.2002).

Additionally, Defendants also seek dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) is designed to test "the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir.1994). In reviewing a Rule 12(b)(6) motion, a court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir.1991). Dismissal is appropriate where "the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Deck v. Engineered Laminates,* 349 F.3d 1253, 1256 (10th Cir.2003) (internal quotations omitted).

### DISCUSSION

The Court begins by considering Defendants' argument that the Anti–Injunction Act strips the Court of subject matter jurisdiction over the Tribe's claims.

### 1. The Anti–Injunction Act (AIA)

With certain statutory exceptions that are not applicable here, the AIA provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). Defendants contend dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is mandated by the Anti–Injunction Act (AIA). (Doc. 26 at pp. 12–17.) The Tribe responds that the relief it seeks is striking or reforming the Treasury regulations, which is not barred by the AIA. (Doc. 38 at pp. 3–4.)

### 1.1 The AIA Applies to this Case Because the Large Employer Mandate Imposes a "Tax"

The Court must first consider the Tribe's contention that "[t]he AIA does not bar suits of this sort, where the relief sought would avoid the imposition of penalties, not taxes." (Doc. 38 at p. 3.) The Tribe's argument on this point goes as follows: If the Court were to strike down or amend the three Treasury regulations to not subject the Tribe to the large employer mandate, then no "tax" would be implicated.

This argument is logically flawed, though, because it requires the assumption that, absent the Treasury regulations, the large employer mandate does not apply to the Tribe. And to reach that assumption requires accepting the Tribe's assertion that Congress did not intend the large employer mandate in 26 U.S.C. § 4980H to apply to the Tribe. In other words, the Tribe's basis for contending the AIA does not bar this case requires reaching the merits of the Tribe's claim prior to determining whether the AIA applies. The Tribe attempts to flip the AIA on its head by requiring consideration of the merits first, but the AIA is designed to operate as a threshold bar against certain lawsuits.

The question is whether this is one of those lawsuits.

By its unambiguous language, the AIA applies to any lawsuit that is filed "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. § 7421(a). Here, the Tribe is preemptively challenging the legality of the Treasury regulations in order to restrain the IRS from assessing the payments described in 26 U.S.C. § 4980H. The United States Supreme Court has explained that the determining factor is whether Congress intended the payment at issue to be a "tax."

▉▉▉ "Because of the Anti-Injunction Act, taxes can ordinarily be challenged only after they are paid, by suing for a refund." *Nat'l Fed'n*, 132 S.Ct. at 2582. The ACA and AIA "are creatures of Congress's own creation," and "[h]ow they relate to each other is up to Congress. . . ." *Id.* at 2583. The United States Supreme Court made clear that the AIA applies where Congress chooses to describe a payment as a "tax." *Id.* at 2582–2584 (finding the individual mandate's "penalty" did not trigger the AIA). Indeed, the AIA applies to a payment labeled as a "tax" even where it is not a true tax. *Id.* at 2583 (citing *Bailey v. George*, 259 U.S. 16, 42 S.Ct. 419, 66 L.Ed. 816 (1922)). Accordingly, the Court examines the statutory language chosen by Congress to describe the payment associated with the large employer mandate.

Section 4980H first describes the exaction faced by an employer under the large employer mandate as an "assessable payment." 26 U.S.C. § 4980H(a), (b)(1). Indeed, it is referred to as an "assessable payment" no less than seven times in six different subsections of § 4980H. *Id.* § 4980H(a), (b)(1), (c)(2)(D)(i)(I), (d)(1), (d)(2), (d)(3). If "assessable payment" was the only term used in § 4980H, this would be a simple matter. However, Congress also referred to the exaction as a "tax" on two occasions in § 4980H. *Id.* § 4980H(b)(2) (capping the "aggregate amount of tax" owed by an employer under the large employer mandate), (c)(7) (explaining the nondeductible nature of the "tax imposed by this section"). Thus, Congress has described a large employer's payment under § 4980H as both a "tax" (which would be subject to the AIA) and as something other than a "tax" (which would remove it from the AIA's reach). Other Courts have faced this discrepancy and have reached conflicting conclusions. *Compare Halbig v. Sebelius*, 27 F.Supp.3d 1, 14–15 (D.D.C.2014) (finding "assessable payment" and "tax" to be interchangeable terms that denote a tax subject to the AIA) [6] *with Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 88 (4th Cir.2013) ("Because Congress initially and primarily refers to the exaction as an 'assessable payment' and not a 'tax,' the statutory text suggests that Congress did not intend the exaction to be treated as a tax for purposes of the AIA.").

▉▉▉ The Court finds the reasoning of the United States District Court for the District of Columbia in *Halbig* to be convincing and, therefore, holds the large employer mandate exaction constitutes a "tax" for purposes of the AIA. Congress chose to call the exaction a "tax" in two different subsections of § 4980H. "Congress' 'inklings' are best determined by the statutory language that it chooses[.]" *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 n. 13, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (noting "the

---

**6.** *Halbig* was later reversed by the Court of Appeals for the District of Columbia, *Halbig v. Burwell*, 758 F.3d 390 (D.C.Cir.2014), but the portion of the district court's decision concerning the AIA was not challenged on appeal.

strong presumption that Congress expresses its intent through the language it chooses").

Perhaps even more telling, Congress described this particular exaction as a "tax" elsewhere in the ACA.

The Secretary shall establish a separate appeals process for employers who are notified under subsection (e)(4)(C) that the employer may be liable for a tax imposed by section 4980H of title 26 with respect to an employee because of a determination that the employer does not provide minimum essential coverage through an employer-sponsored plan or that the employer does provide that coverage but it is not affordable coverage with respect to an employee.

42 U.S.C. § 18081(f)(2)(A) (emphasis added); *see also Nat'l Fed'n*, 132 S.Ct. at 2583–84 (concluding the individual mandate was not subject to the AIA, in part because it was not referred to as a "tax" in other sections of the ACA); *but see Liberty Univ.*, 733 F.3d at 88 (mistakenly concluding "Congress did not otherwise indicate that the employer mandate exaction qualifies as a tax for AIA purposes").

The Fourth Circuit in *Liberty University* found it would be anomalous if the individual mandate exaction was not subject to the AIA (as the Supreme Court held in *National Federation*) but the large employer mandate exaction was subject to the AIA. *See Liberty Univ.*, 733 F.3d at 88–89. The Court finds the District of Columbia's reasoning persuasive on this question.

Nor does it seem anomalous that Congress would have intended to allow pre-enforcement challenges by individuals while prohibiting pre-enforcement suits by employers. In fact, another provision in Section 4980H confirms that Congress assumed that employers would raise their challenges in post-collection suits. The statute provides that the

Secretary of the Treasury "shall prescribe rules ... for the *repayment* of any assessable payment ... if such payment is based on the allowance or payment of an applicable premium tax credit or cost-sharing reduction with respect to an employee, such allowance or payment is subsequently disallowed, and the assessable payment would not have been required to be made but for such allowance or payment." 26 U.S.C. § 4980H(d)(3) (emphasis added). No such comparable provision exists with respect to individuals. *See generally* 26 U.S.C. § 5000A.

*Halbig*, 27 F.Supp.3d at 15–16. Accordingly, the Court finds Congress intended the disparate treatment between the individual mandate's exaction and the large employer mandate's exaction.

Finally, after this Court's prior Order Denying Preliminary Injunction (Doc. 21), the Fifth Circuit considered the same question and also concluded the large employer mandate was a "tax" for purposes of the AIA. *Hotze v. Burwell*, 784 F.3d 984, 997 (5th Cir.2015) ("As said by the Supreme Court in NFIB, textual evidence is 'the best evidence' of whether an exaction constitutes a 'tax' for the purposes of the AIA. And here, unlike the individual mandate, the text of the ACA explicitly indicates that the employer-mandate exaction indeed is a 'tax.'") (internal citations omitted).

■ "Absent a clear indication by Congress, the Court views the term 'tax' as used in 26 U.S.C. § 7421(a), the Anti-Injunction statute, as having the same meaning as the term 'tax' as used elsewhere in the Internal Revenue Code, including in Section 4980H." *Halbig*, 27 F.Supp.3d at 15. For these reasons, the Court holds the large employer mandate constitutes a tax for purposes of the AIA.

Therefore, the AIA operates to bar this lawsuit and precludes the Tribe's request to restrain the assessment or collection of the tax required by the large employer mandate.

### 1.2 The Federal Tax Exception to the Declaratory Judgment Act (DJA) also Precludes the Tribe's Requested Relief

The Declaratory Judgment Act (DJA) also prohibits suits for declaratory relief "with respect to federal taxes." 28 U.S.C. § 2201(a). As noted earlier, the bulk of the Tribe's requested relief asks the Court to "declare" a number of things, all of which would result in the Tribe being excluded from the large employer mandate. (See Doc. 1 at ¶¶ 55, 62, pp. 16–17.) The Supreme Court has stated that "it is in any event clear that the federal tax exception to the Declaratory Judgment Act is at least as broad as the prohibition of the Anti–Injunction Act." *Alexander v. Americans United Inc.*, 416 U.S. 752, 781 n. 10, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974). The Court has focused its discussion on the Anti–Injunction Act, but the same reasoning applies to the Declaratory Judgment Act. *See Wyo. Trucking Ass'n, Inc. v. Bentsen*, 82 F.3d 930, 933 (10th Cir. 1996). The prohibition in the DJA "with respect to federal taxes," 28 U.S.C. § 2201(a), also precludes the Tribe's requests for declaratory relief.

### 1.3 The AIA and DJA Operate as Jurisdictional Bars

Defendants accurately assert the U.S. Supreme Court has indicated on repeated occasions that the AIA operates as a jurisdictional limitation on a court's authority to hear a case. (Doc. 27 at p. 13 (collecting cases).) In its prior Order Denying Preliminary Injunction, however, the Court noted that part of the Tenth Circuit has determined the AIA is not jurisdictional, but rather a waivable affirmative defense. (Doc. 21 at p. 8 n.6 (citing *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1158–59 (10th Cir.2013) (*en banc*) (Gorsuch, J., concurring)). In *Hobby Lobby*, three of the eight judges sitting on the *en banc* court determined the AIA is nonjurisdictional. *Hobby Lobby*, 723 F.3d at 1152, 1157–59. Defendants are correct in arguing such a determination is not binding on this Court and does not alter prior Tenth Circuit (and Supreme Court) case law that held the AIA is a jurisdictional bar where it applies. (See Doc. 27 at p. 7.) *See, e.g., Jefferson Cnty. v. Acker*, 527 U.S. 423, 434, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999) (describing the AIA as "depriving courts of jurisdiction over [certain] suits"); *Bob Jones Univ. v. Simon*, 416 U.S. 725, 749, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974) (holding the Fourth Circuit "did not err in holding that § 7421(a) [the AIA] deprived the District Court of jurisdiction"); *Hobby Lobby*, 723 F.3d at 1126 (the majority describes the AIA as a "possible impediment to our subject-matter jurisdiction"); *Wade v. Regional Director*, 504 Fed.Appx. 748, 752 (10th Cir.2012) (unpublished) (affirming the district court's decision that the lawsuit was barred by the AIA, but remanding the case "for the district court to revise the judgment to clarify that the petition was dismissed without prejudice for lack of subject matter jurisdiction").

While the minority's analysis in *Hobby Lobby* on the jurisdictional nature of the AIA may be compelling, it does not change the fact that this Court is bound by U.S. Supreme Court and Tenth Circuit case law holding the opposite. Therefore, the Court concludes the AIA applies in this case and operates to strip the Court of subject matter jurisdiction over the Tribe's lawsuit.

The same conclusion applies with respect to the Declaratory Judgment Act (DJA). *See Wyo. Trucking Ass'n v. Bent-*

*sen,* 82 F.3d 930, 935 (10th Cir.1996) (holding that the court lacked subject matter jurisdiction based on the DJA's federal tax exception over an action seeking a "declaration as to the rights of litigating parties with respect to federal taxes"). The DJA does not provide this Court with subject matter jurisdiction over the declaratory judgment portions of the Tribe's lawsuit.

### 1.4 Even if the AIA and DJA were not Jurisdictional, They Would Still Bar this Lawsuit and Require Dismissal Under Rule 12(b)(6)

Alternatively, if Judge Gorsuch's reasoning in *Hobby Lobby* controls and the AIA is non-jurisdictional, the AIA would still bar this lawsuit because Defendants have affirmatively raised the AIA as a defense. Because the AIA and DJA apply to and bar this lawsuit (as discussed above), the Tribe has failed to plead a claim upon which its requested relief can be granted. Therefore, dismissal pursuant to Rule 12(b)(6) would be appropriate. (*See* Doc. 27 at p. 17 n.9 (alternatively requesting dismissal under 12(b)(6) because the AIA bars this action).)

### 1.5 The Tribe's Attempt to Bring this Lawsuit in *Parens Patriae* does not Save it from Dismissal

The Tribe asserts its suit should not be barred by the AIA because it brings the action on behalf of its tribal members in a *parens patriae* capacity. (Doc. 39 at pp. 7–13.) Essentially, the Tribe contends it brings this suit to prevent the large employer mandate from blocking its tribal members' access to the ACA's benefits (premium tax credits and reduced or eliminated costsharing). (*Id.* at p. 11.)

 *Parens patriae* is "a standing doctrine that permits a State to sue ... to prevent or repair harm to its quasi-sovereign interests." *Cheyenne. & Arapaho*

*Tribes v. First Bank & Trust Co.,* 560 Fed.Appx. 699, 705 (10th Cir.2014) (unpublished) (internal quotation marks omitted) (quoting *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 258, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972)). "In order to maintain [a parens patriae] action, the State must articulate an interest apart from the interest of particular private parties.... The State must express a quasi-sovereign interest." *Sierra Club v. Two Elk Generation Partners, Ltd. P'ship,* 646 F.3d 1258, 1268 (10th Cir.2011) (quoting *Satsky v. Paramount Commc'ns, Inc.,* 7 F.3d 1464, 1469 (10th Cir.1993)).

The Tribe's *parens patriae* argument suffers from multiple shortcomings, though. In general, those shortcomings come in two varieties: (1) the Tribe has not established *parens partiae* standing, and (2) even if the Tribe has *parens patriae* standing in this case, such standing does not defeat the AIA and DJA bars.

 Turning to the first shortcoming, the Tribe's claims cannot affect all of its members, but only those employed by the Tribe to which the Tribe must offer health insurance coverage under the large employer mandate. However, a *parens patriae* action is asserted on behalf of *all* of the sovereign's citizens. "[W]hen a State is 'a party to a suit involving a matter of sovereign interest,' it is *parens patriae* and 'must be deemed to represent all [of] its citizens.'" *S. Carolina v. N. Carolina,* 558 U.S. 256, 266, 130 S.Ct. 854, 175 L.Ed.2d 713 (2010) (quoting *New Jersey v. New York,* 345 U.S. 369, 372–73, 73 S.Ct. 689, 97 L.Ed. 1081 (1953)). *See also, e.g., United States v. Santee Sioux Tribe of Neb.,* 254 F.3d 728, 734 (8th Cir.2001) ("The doctrine of parens patriae allows a sovereign to bring an action on behalf of the interest of all of its citizens."); *Navajo Nation v. Superior Court of State of Wash. for Yakima Cnty.,* 47 F.Supp.2d 1233, 1240

(E.D.Wash.1999) *aff'd,* ·331 F.3d 1041 (9th Cir.2003) ("The Navajo Nation has failed to prove it is acting on behalf of all of its members in order to litigate as *parens patriae.*"). The Tribe has not addressed or explained why it should be permitted to bring a *parens patriae* action on behalf of only some of its affected members.

 Additionally, the Tribe has not established its *parens patriae* standing. The Tenth Circuit has quoted the U.S. Supreme Court in setting forth three requirements a plaintiff must satisfy for *parens patriae* standing:

> First, the state must "articulate an interest apart from the interests of particular private parties, *i.e.,* the [plaintiff] must be more than a nominal party." Second, the state must "express a quasi-sovereign interest" that it seeks to protect. Finally, the state must "allege injury to a sufficiently substantial segment of its population."

*Thiebaut v. Colorado Springs Utilities,* 455 Fed.Appx. 795, 799–800 (10th Cir.2011) (unpublished) (internal citations omitted) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 607, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982)). Here, the Tribe has not established the third requirement because it has not shown an alleged injury to a sufficiently substantial segment of its population. The Tribe does not indicate how many people belong to the Northern Arapaho Tribe, but there is no question it employs fewer than all of its tribal members. The Tribe has not shown or even alleged that a sufficiently substantial segment of its· population faces injury from the issues raised in this case.

Turning to the second shortcoming now, even if the Tribe has standing to pursue this action on behalf of its members, possessing standing does not overcome the AIA and DJA bars. The Tribe is mixing apples with oranges. Accepting the Tribe's contention as true and assuming the Tribe's ability to bring this suit on behalf of its members in a *parens patriae* capacity, the result if the Tribe's members prevailed would still be to restrain the assessment or collection of the tax provided for by the large employer mandate. The AIA appears to speak directly to this, though: "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, **whether or not such person is the person against whom such tax was assessed.**" 26 U.S.C. § 7421(a) (emphasis added). And the DJA permits a federal court to declare the rights of interested parties "[i]n a case of actual controversy within its jurisdiction, **except with respect to Federal taxes . . . .**" 28 U.S.C. § 2201(a) (emphasis added). Possessing standing, in a *parens patriae* capacity or otherwise, does not vest jurisdiction in this Court. Whether the action is maintained by the Tribe on its own behalf or on behalf of its members makes no difference to the AIA and DJA, and both operate to bar this lawsuit.

Therefore, the Tribe has not established it can bring this action in a *parens patriae* capacity and, even if such was established, it would not evade the bar of the AIA and DJA.

### 2. *Waiver*

In their second threshold procedural issue, Defendants contend the Tribe has waived or abandoned its opportunity to challenge the final regulations promulgated by the Treasury because the Tribe (and anyone else) failed to submit comments regarding its concerns to the Treasury during the notice-and-comment period.

### 2.1 *Applicable Law*

 In this lawsuit, the Tribe contends the final regulations promulgated by the Treasury violate the Administrative Proce-

dures Act (the APA). (Doc. 1 at ¶¶ 56–62.) The APA, which is found at Title 5 of the United States Code, governs the method in which federal administrative agencies (including the Department of Treasury) may propose and enact regulations. The APA requires federal agencies to submit proposed regulations to a notice-and-comment period before they can become a final regulation. *See* 5 U.S.C. § 553. During that period, concerned parties are encouraged to submit comments, which the agency considers in determining whether the proposed regulation should be adopted as proposed, amended, or discarded. *See id.*; *Flanagan v. United States*, 810 F.2d 930, 934 (10th Cir.1987). Once final, the regulations carry the force and effect of law. *See ABC Rentals of San Antonio v. C.I.R.*, 142 F.3d 1200, 1205 (10th Cir.1998).

■ To challenge an agency's rulemaking in court, a litigant must avail itself of the notice-and-comment process and bring the issue to the attention of the agency prior to filing a lawsuit.

> In *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), the Supreme Court determined that a party wishing to challenge agency action must participate in the public process so that it alerts the agency of the party's positions and contentions and, therefore, allows "the agency to give the issue meaningful consideration." *Department of Transp. v. Public Citizen*, 541 U.S. 752, 764, 124 S.Ct. 2204, 159 L.Ed.2d 60 (2004); *Vermont Yankee*, 435 U.S. at 553–54, 98 S.Ct. 1197. *See also Wilson v. Hodel*, 758 F.2d 1369, 1373 (10th Cir. 1985) ("[A] reviewing court will not consider contentions which were not pressed upon the administrative agency.").

*Wyoming Lodging & Rest. Ass'n. v. U.S. Dep't of Interior*, 398 F.Supp.2d 1197, 1209 (D.Wyo.2005). "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but erred against objection made at the time appropriate under its practice." *Wilson v. Hodel*, 758 F.2d 1369, 1372–73 (10th Cir.1985) (quoting *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952)).

**2.2 *Analysis***

■ Here, the Tribe has not suggested it submitted written comments or raised its current concerns in any manner during the relevant notice-and-comment periods. Quite opposite of its position at the preliminary injunction hearing, though, the Tribe now asserts the same concerns it raises in this lawsuit were raised by a different entity—the Elk Valley Rancheria, California, another federally-recognized Indian tribe. (*Compare* Doc. 23 (Prelim.Inj. Tr.) at pp. 23–26 *with* Doc. 38 at pp. 13–17; *see also* Doc. 21 (Order Denying Prelim. Inj.) at pp. 13–17.) A plaintiff's waiver is excused where other comments presented the same issues to the agency sufficient to put the agency on notice of the existing concerns. *See Wyoming Lodging & Rest. Ass'n.*, 398 F.Supp.2d at 1210 (excusing waiver where many other comments raised the issues asserted by the plaintiffs).

■ The Defendant argued, and the Court previously agreed, that the Elk Valley Rancheria's comments assumed it was subject to the large employer mandate under the ACA. (*See* Doc. 21 at p. 13.) Now, the Tribe contends Elk Valley Rancheria's letter to the Department of Treasury placed the agency on notice of the issues raised by the Tribe in this case. (Doc. 38 at pp. 13–17.) Stated simply, the Court disagrees. The Elk Valley Rancheria's letter assumes the very premise the Tribe attacks in this lawsuit.

■ At its core, the Tribe's claim is that the large employer mandate should not apply to Indian tribes. Multiple times, however, the Elk Valley Rancheria's comments assume the large employer mandate (along with one of the Treasury regulations challenged here) applies to it. Examples where the Elk Valley Rancheria assumes it is subject to the large employer mandate and must offer health insurance coverage to its employees include the following:

- "The [Elk Valley Rancheria] Tribe has an interest in the outcome of the Proposed Rule [reporting requirements] **because the Tribe is a large employer under the ACA....**" (Doc. 38–1 at p. 1 (emphasis added).)

- "[E]mployers in or near Indian country may employ work forces comprised predominantly of Tribal Members. Therefore, an employer may incur undue suspicion of noncompliance or penalties even though it offers the required coverage to all of its full time employees minimum essential coverage." (*Id.* at p. 2.)

- "Tribes expressly qualify for the benefits of this provision **because they are governmental units under Section 1.6055–1(b)(6).**" (*Id.* at p. 3 (emphasis added).)

- "The lack of a definition is problematic for tribes **because tribes more than other governmental units** rely on wholly-owned entities to provide much needed governmental revenue." (*Id.* at p. 3 (emphasis added).)[7]

■ To avoid waiver, "the claims raised at the administrative appeal and in the federal complaint must be so similar that the district court can ascertain that the agency was on notice of, and had an opportunity to consider and decide, the same claims now raised in federal court." *Kleissler v. U.S. Forest Serv.,* 183 F.3d 196, 202 (3rd Cir.1999) (quoted in *Silverton Snowmobile Club v. U.S. Forest Serv.,* 433 F.3d 772, 783 (10th Cir.2006)). As the quoted portions of the Elk Valley Rancheria's letter demonstrate, the issues raised by the Elk Valley Rancheria are not so similar that this Court can ascertain the Treasury was on notice of, and had opportunity to consider and decide, the same claims now raised by the Tribe in federal court. The very challenges asserted here by the Tribe, that it is not subject to the large employer mandate and that it is not a "governmental unit," were accepted as basic premises by the Elk Valley Rancheria. The Tribe cannot use the Elk Valley Rancheria's public comments to avoid the threshold barrier of waiver. Nothing suggests the Treasury was alerted to the Tribe's positions and contentions during the notice-and-comment period. Accordingly, absent a valid exception, the Tribe has waived the arguments it presents here by failing to bring them to the agency's attention during the public rulemaking process.

In its response to the motion to dismiss, the Tribe also advanced arguments to except it from waiver similar to those advanced at the preliminary injunction hearing, specifically: (1) Defendants failed to put the Tribe on sufficient notice about the effects these final regulations would have, and (2) the waiver principle applies only to procedural challenges whereas this lawsuit constitutes a substantive challenge.

---

7. The Court takes judicial notice of the ElkValley Rancheria, California's letter 'as a matter of public record,' which does not convert this Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. *Tal v. Hogan,* 453 F.3d 1244, 1265 n. 24 (10th Cir.2006).

The Tribe's first exception to waiver is that it was not required to comment during the notice-and-comment period because Defendants "failed to comply with Executive Order 13175 of 2000 or with the Treasury Department's own Tribal Consultation Policy." (Doc. 38 at p. 17.) The Tribe quotes the relevant part of that Executive Order as follows:

· To the extent practicable and permitted by law, no agency shall promulgate any regulation that has tribal implications, that imposes substantial direct compliance costs on Indian tribal governments, and that is not required by statute, unless: [among other requirements,] the agency ... in a separately identified portion of the preamble to the regulation as it is to be issued in the *Federal Register*, provides ... a tribal summary impact statement, which consists of a description of the extent of the agency's prior consultation with tribal officials, a summary of the nature of their concerns and the agency's position supporting the need to issue the regulation, and a statement of the extent to which the concerns of tribal officials have been met[.]

(Doc. 38 at p. 17 (quoting Exec. Order No. 13175, § 5(b), 65 Fed.Reg. 67249, 67250–51 (Nov. 6, 2000)).) Defendants are correct, however, that by its own language, this Executive Order does not provide the support the Tribe needs to escape waiver:

Sec. 10. *Judicial Review.* **This order is intended only to improve the internal management of the executive branch, and is not intended to create any right, benefit, or trust responsibility, substantive or procedural, enforceable at law by a party against the United States, its agencies, or any person.** ·

Exec. Order No. 13175, § 10, 65 Fed.Reg. 67249, 67252 (Nov. 9, 2000) (emphasis added).[8] Thus, the plain language of Executive Order 13175 does not provide any right enforceable ·in this judicial action alleged by the Tribe. ·

Likewise, the Treasury's Interim Tribal Consultation Policy provides no traction for the Tribe. There, the Treasury stated it "will endeavor to consult with Tribal Governments prior. to issuing regulations, published guidance, and Policies with Tribal Implications." 79 Fed.Reg. 71816, 71816 (Dec. 3, 2014). As with the Executive Order, though, the Interim Tribal Consultation Policy "is not intended to create any right, benefit, or trust responsibility, substantive or procedural, enforceable at law by a party against the Department or any person." *Id.* at 71817. By its very language, the Interim Tribal Consultation Policy does not permit the Tribe to escape waiver. Moreover, this Interim Tribal Consultation Policy was issued months *after* the notice-and-comment period at issue in this case had expired. Therefore, the Tribe's reliance upon the Interim Tribal Consultation Policy and Executive Order 13175 as bases to file this lawsuit without utilizing the notice-and-comment period is wholly misplaced. Executive Order 13175 and the Treasury's Interim Tribal Consultation Policy do not permit the Tribe to evade the requirement that these issues be brought to the agency's attention prior to filing a lawsuit.

In its second alleged exception to waiver, the Tribe argues the waiver principle applies only to procedural challenges whereas this is a substantive challenge.[9]

---

8. As with the Elk Valley Rancheria's public comments, the Court takes judicial notice of Executive Order 13175 and the Treasury's Interim Tribal Consultation Policy as matters of public record, which do not convert this Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir.2006).

9. The Tribe's challenge is substantive in that it alleges the Treasury exceeded its authority

As it did at the preliminary injunction hearing, the Tribe again invites the Court to permit the Tribe "to bring a substantive challenge to the Defendants' regulations regardless of whether the Rancheria or any other commenter raised similar concerns in the notice-and-comment period." (Doc. 38 at p. 19.) The Court again declines to apply a rule different than that espoused by the Tenth Circuit.

The Tribe offers two cases from the Court of Appeals for the District of Columbia Circuit and a specially concurring opinion from an appeal in the Tenth Circuit as support for its position: *Indep. Cmty. Bankers of Am. v. Bd. of Governors of Fed. Reserve Sys.*, 195 F.3d 28 (D.C.Cir. 1999); *Graceba Total Comm'ns, Inc. v. F.C.C.*, 115 F.3d 1038 (D.C.Cir.1997); and *Big Horn Coal Co. v. Temple*, 793 F.2d 1165 (10th Cir.1986). Essentially, the three cited cases state a party is not required to participate in the notice-and-comment period to raise a later substantive challenge to an agency's rulemaking in a court of law. Judge Barrett commented in his specially concurring opinion in the 1986 case of *Big Horn Coal*[10] as follows:

> The rule **should** be that unless a petitioner can demonstrate that an agency rule is invalid *ab initio* because it is constitutionally infirm or exceeds the agency's statutory authority, the petitioner is estopped from challenging the procedural promulgation of the rule after the time period for filing such a challenge has expired, regardless of whether petitioner objected during the notice and comment period.

*Big Horn Coal*, 793 F.2d at 1170 (Barrett, J., specially concurring) (emphasis added).

Judge Barrett's proposed rule is inviting, but it is not the law in the Tenth Circuit. Both earlier and later cases, from the Tenth Circuit, found waiver applicable in lawsuits where a party attempted to challenge an agency's final decision, both procedurally and substantively, but failed to raise the issue during the public process. *See, e.g., Silverton Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 783 (10th Cir.2006) (refusing to consider an argument that the agency's decision was arbitrary, capricious, and "illegal as a matter of law" because such argument was not presented to the agency); *New Mexico Envtl. Imp. Div. v. Thomas*, 789 F.2d 825, 835 (10th Cir.1986) (refusing to consider an argument that the agency's decision resulted in "illegal discrimination" because such argument was not presented to the agency during the notice-and comment period of rulemaking); *see also Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 764–65, 124 S.Ct. 2204, 159 L.Ed.2d 60 (2004) (refusing to examine an argument that the agency failed to consider possible alternatives to its final regulations because such argument was not presented to the agency "in order to allow the agency to give the issue meaningful consideration"); *see also Nutraceutical Corp. v. Von Eschenbach*, 459 F.3d 1033, 1041 n. 9 (10th Cir.2006) (finding the party had "generally" advanced enough "dissatisfaction" toward the agency's proposed regulation so as to avoid waiver).

While the specially concurring opinion in *Big Horn Coal* may be appealing, it is not the law. The law set forth by the Tenth Circuit and applicable to this case says the Tribe, or somebody else, is required to

---

in enacting the final regulations at issue in this case. A procedural challenge would question whether the Treasury followed the correct process in promulgating the regulations (e.g., whether it published the proposed rules for the required 30-day minimum).

**10.** The Tribe pointed out the Court incorrectly attributed this quote to the *Graceba Total Comm'ns* case in its prior Order Denying Preliminary Injunction. (Doc. 38 at p. 21.) That inaccurate attribution and citation have been corrected here.

present its concerns to the agency during the public rulemaking process in order to afford the agency an opportunity to consider and address the concerns *prior* to enacting a final regulation. Indeed, "the very purpose of [the public notice-and-comment period] is to give interested parties the opportunity to participate in rulemaking and to ensure that the agency has before it all relevant information." *Western Energy Alliance v. Salazar,* 2011 WL 3738240, at *7 (D.Wyo.2011) (unpublished) (quoting *Natural Resources Defense Council v. EPA,* 643 F.3d 311, 321 (D.C.Cir. 2011)). The Tribe has not shown it or any other party presented the issues in this lawsuit to the Treasury during the public notice-and-comment period. Having failed to comment during the extended rulemaking process here, the Tribe cannot now be heard to complain. The Tribe waived its current challenge to the final regulations when it (and others) did not bring the matter to the Treasury's attention during the notice-and-comment period, and the Court will not "consider contentions which were not pressed upon the administrative agency." *Wilson v. Hodel,* 758 F.2d at 1373. Therefore, the policy of waiver bars the Tribe's assertions under the APA.

## 3. Merits

 Defendants also assert dismissal under Rule 12(b)(6) is appropriate on the merits of the claim because the Tribe has not stated a claim upon which relief can be granted. (Doc. 27 at pp. 19–24.) The Tribe disagrees and argues the Treasury's regulations run directly contrary to the ACA. (Doc. 38 at pp. 21–29.) While the Court has determined the Tribe's claims are barred by the Anti–Injunction Act and Declaratory Judgment Act, as well as by waiver, it considers this merits-based argument as an additional ground supporting dismissal because it involves statutory construction, which is a question of law. *Koch*

*Indust., Inc. v. United States,* 603 F.3d 816, 821 (10th Cir.2010).

### 3.1 Governing Law

As a starting point, it's important to clarify the different standards governing this Rule 12(b)(6) motion and the prior motion for preliminary injunction. Defendants inaccurately assert the Court already found the Tribe "unlikely to succeed on the merits." (Doc. 27 at p. 13 n.6.) Instead, "the Court conclude[d] the Tribe ha[d] not shown it is likely to succeed on the merits." (Doc. 21 at p. 25.) It was the Tribe's burden to prove a likelihood of success on the merits at the earlier preliminary injunction stage whereas it is Defendants' burden to show dismissal under 12(b)(6) is warranted. The analyses are similar but not identical, and the Court's prior conclusion on the preliminary injunction motion does not control the decision on this motion to dismiss.

As noted earlier, a motion under Rule 12(b)(6) requires the Court to accept the well-pleaded allegations as true and construe them in a light most favorable to the non-moving party. "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines,* 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The Tribe's contentions inquire into the relevant ACA language and the Treasury's interpretation thereof.

"When a court reviews an agency's construction of the statute which it adminis-

ters, it is confronted with two questions." First, applying the ordinary tools of statutory construction, the court must determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."

*City of Arlington, Tex. v. F.C.C.,* —— U.S. ——, 133 S.Ct. 1863, 1868, —— L.Ed.2d —— (2013) (internal citations omitted) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). The Court gives deference to the agency's interpretation so long as that interpretation is not arbitrary, capricious, or manifestly contrary to the statute. *Chevron,* 467 U.S. at 844, 104 S.Ct. 2778. The Treasury administers the Internal Revenue Code and the Court must defer to the Secretary of the Treasury's "regulatory interpretations of the Code so long as they are reasonable." *Koch Indus., Inc. v. United States,* 603 F.3d 816, 821 (10th Cir.2010) (quoting 26 U.S.C. § 7805(a) and *Cottage Sav. Ass'n v. Comm'r,* 499 U.S. 554, 560–61, 111 S.Ct. 1503, 113 L.Ed.2d 589 (1991)).

### 3.2 *Discussion*

Essentially, the question in this case boils down to whether the Treasury's final regulations collide with Congress's intent when it passed the ACA. For the reasons discussed below, the Court finds § 4980H is unambiguous and the Treasury's final regulations are consistent with the ACA.

### 3.2.1 Congress's Intent to Include Tribes as Large Employers is Clear

Congress expressed its intent in § 4980H that the large employer mandate apply to all large employers, including Indian tribes. As noted earlier, the individual mandate explicitly excludes specific individuals from its requirements (26 U.S.C. § 5000A(d)(1)-(4)) and also exempts certain individuals (including Native Americans) from the associated tax penalty (*id.* § 5000A(e)(1)–(5)). In contrast, the large employer mandate exempts no large employers from its exaction (save for employers of seasonal workers who only reach the 50–employee threshold as a result of seasonal workers). 26 U.S.C. § 4980H(c)(2)(B). This difference aptly demonstrates that Congress was fully capable of exempting Indian tribes from the large employer mandate if it so intended. "Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally." *Nat'l Fed'n,* 132 S.Ct. at 2583 (citing *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)).

Section 4980H defines the subject large employers as, "with respect to a calendar year, an employer who employed an average of at least 50 full-time employees on business days during the preceding calendar year." 26 U.S.C. § 4980H(c)(2)(A). It is true, as the Tribe argues, that nowhere in § 4980H did Congress expressly identify Indian tribes as being subject to the large employer mandate. *See id.* § 4980H. Failure to specify Indian tribes as large employers is not enough to suggest they must be excluded, however. If Congress wished to exempt Indian tribes from this mandate that otherwise might be reasonably construed as applying to them, it needed to do so explicitly. *Chickasaw*

*Nation v. United States,* 208 F.3d 871, 880 (10th Cir.2000), *aff'd,* 534 U.S. 84, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001). *See also United States v. Wells Fargo Bank,* 485 U.S. 351, 354, 108 S.Ct. 1179, 99 L.Ed.2d 368 (1988) ("[E]xemptions from taxation ... must be unambiguously proved"); *Squire v. Capoeman,* 351 U.S. 1, 6, 76 S.Ct. 611, 100 L.Ed. 883 (1956) ("[T]o be valid, exemptions to tax laws should be clearly expressed"); *United States Trust Co. v. Helvering,* 307 U.S. 57, 60, 59 S.Ct. 692, 83 L.Ed. 1104 (1939) ("Exemptions from taxation do not rest upon implication"). Congress's decision not to expressly exempt Indian tribes as large employers suggests Congress intended them to be subject to the large employer mandate.

### 3.2.2 General Applicability of the ACA and the Large Employer Mandate

Next, the ACA is an act of general applicability. "[I]t is now well settled by many decisions of [the United States Supreme Court] that a general statute in terms applying to all persons includes Indians and their property interests." *Fed. Power Comm'n v. Tuscarora Indian Nation,* 362 U.S. 99, 116, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960).

> When a federal law of general applicability is silent on the issue of applicability to Indian tribes, we have explained that it applies equally to Indians unless: "(1) the law touches 'exclusive rights of self-governance in purely intramural-matters'; (2) the application of the law to the tribe would 'abrogate rights guaranteed by Indian treaties'; or (3) there is proof 'by legislative history or some other means that Congress intended [the law] not to apply to Indians on their reservations....'"

*United States v. Fox,* 573 F.3d 1050, 1052 (10th Cir.2009) (quoting *Nero v. Cherokee Nation of Oklahoma,* 892 F.2d 1457, 1462–63 (10th Cir.1989) (citation omitted)).

First, the large employer mandate of § 4980H does not affect exclusive rights of the Tribe's self-governance and does not concern purely intramural matters. Second, applying the large employer mandate to the Tribe would not "abrogate rights guaranteed by Indian treaties." On this topic, as it did at the preliminary injunction hearing, the Tribe offered the "Treaty with the Northern Cheyenne and Northern Arapaho, 1868" as support. (*See* Doc. 38 at pp. 25–26, p. 25 n.26.) The Tribe highlighted the following passage from the 1868 Treaty as support for its assertion that the large employer mandate affects its treaty rights:

> ARTICLE 7. The United States hereby agrees to furnish annually to the Indians who settle upon the reservation a physician ... as herein contemplated, and that such appropriations shall be made from time to time on the estimates of the Secretary of the Interior as will be sufficient to employ such persons.

Considering the plain language, there is simply no suggestion that the ACA's large employer mandate abrogates rights guaranteed by Article 7 of the 1868 Treaty. Nothing in § 4980H addresses the United States' agreement to furnish a physician to the Tribe. It simply does not apply in this case. The Tribe has not demonstrated how the large employer mandate would, or even could, abrogate rights guaranteed to it by treaties. Third and finally, as discussed above, the language employed by Congress in § 4980H suggests it intended the large employer mandate to apply to Indian tribes. The Tribe has not identified any legislative history or some other means that would suggest the opposite. Thus, the ACA, as a federal law of general applicability, applies equally to Indian tribes.

### 3.2.3 Failure to Expressly Identify Indian Tribes as Large Employers Does Not Exclude Them from the Large Employer Mandate

The Tribe's reliance upon *Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1283 (10th Cir.2010) (*Dobbs II*), is unavailing. (*See* Doc. 9 at pp. 14–16; *see also* Doc. 38 at p. 23 n.21 (incorporating its arguments from its motion for preliminary injunction).) The Tribe relied on the following paragraph from *Dobbs II* to suggest the Tribe is automatically exempt from the large employer mandate unless expressly included therein:

> In this circuit, respect for Indian sovereignty means that federal regulatory schemes do not apply to tribal governments exercising their sovereign authority absent express congressional authorization [citations omitted].... Although our early cases relied in part on treaties that expressly protected Indian tribes' sovereignty, *see, e.g., Donovan* [*v. Navajo Forest Prods. Indus.*], 692 F.2d [709] at 711–12 [ (10th Cir.1982) ], we later recognized that a treaty was not a necessary prerequisite to exemption, *see, e.g., Pueblo of San Juan*, 276 F.3d at 1191.

*Dobbs II*, 600 F.3d at 1283–84. This principle does not apply in the instant case, though. The Tribe is not asserting the ACA interferes with the exercise of its sovereign authority. *See id.* at 1283 n. 9 ("We have distinguished, however, between cases in which an Indian tribe exercises its property rights and cases in which it 'exercise[s] its authority as a sovereign.'") (quoting *N.L.R.B. v. Pueblo of San Juan*, 276 F.3d 1186, 1199 (10th Cir. 2002)). The Tribe does not contend the ACA interferes with its own sovereign healthcare system or other tribal law. Instead, at its core, the Tribe argues its inherent sovereign authority permits it to pick and choose the parts of the ACA it finds most beneficial while avoiding being subject to the remainder. Such cherry picking is not the exercise of sovereign authority.[11] Quite understandably and appropriately, the Tribe wants to achieve the greatest possible benefit under the ACA for its tribal employees. This desire, though, is not the exercise of sovereign tribal governance.

Moreover, the Tenth Circuit has explained an Indian tribe's sovereign authority is not compromised where federal legislation affects the tribe's "proprietary capacity such as that of employer or landowner." *N.L.R.B. v. Pueblo of San Juan*, 276 F.3d 1186, 1199 (10th Cir.2002). The exercise of authority in a proprietary capacity (here, as an employer) is distinct from the exercise of authority as a sovereign. *See id.*

The legislative enactment of the Pueblo's right-to-work ordinance was also clearly an exercise of sovereign authority over economic transactions on the reservation. This distinguishes the Pueblo's exercise of sovereign authority here from a congressional enactment like that in [*Fed. Power Comm'n v.*] *Tuscarora* [*Indian Nation*, 362 U.S. 99, 80 S.Ct. 543, 4 L.Ed.2d 584 (1960),] which did not affect tribal legislative

---

11. *Dobbs II* provides a good comparison. In that case, the Indian tribe had exercised its tribal sovereignty by purchasing a health insurance plan for its employees, much like many local and state governments do for its employees. *Dobbs II*, 600 F.3d at 1284. The Tenth Circuit found, "Applying ERISA to such plans would prevent tribal governments from purchasing insurance plans for governmental employees in the same manner as other government entities, thus treating tribal governments as a kind of inferior sovereign." *Id.* Here, in contrast, the Tribe mentions no desire or intent to govern the health insurance coverage of its employees.

policy but instead impacted proprietary interests.

*Id.* at 1200. Here, in contrast to *Pueblo of San Juan,* the Tribe has not asserted the ACA affects tribal legislative policy. Instead, it impacts the Tribe's proprietary capacity as an employer.

### 3.2.4 The "Indian Canons of Construction" Do Not Apply to this Unambiguous Statute

 Finally, the Tribe asserts "the Court must apply the Indian canons of construction, which require that federal statutes be construed liberally in favor of Native Americans, with ambiguous provisions interpreted to their benefit." (Doc. 9 at p. 23; Doc. 38 at pp. 26–28); *see Montana v. Blackfeet Tribe,* 471 U.S. 759, 766, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985). The Court has found no ambiguity in § 4980H, though; therefore, the canons of statutory interpretation favoring liberal construction in Indians' favor do not apply here. *See Chickasaw Nation v. United States,* 534 U.S. 84, 99, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001) (turning to canons of construction, including Indian canon, only after "nothing in the text, legislative history, or underlying policies" resolved an ambiguity in the Indian Gaming Regulatory Act); *South Carolina v. Catawba Indian Tribe,* 476 U.S. 498, 506, 106 S.Ct. 2039, 90 L.Ed.2d 490 (1986) (the Indian canon means that "doubtful expressions of legislative intent must be resolved in favor of the Indians"). Here, the Court finds no doubtful expression of Congress's intent.

In sum, the Court finds 26 U.S.C. § 4980H is clear and unambiguous. Congress knew how and expressly chose to exclude Native Americans from the penalty provision of the individual mandate, but chose not to exclude Indian tribes from the large employer mandate.

### 3.2.5 The Treasury's Final Regulations Give Effect to the Unambiguously Expressed Intent of Congress

 Turning now to the final regulations, the Court finds they are consistent with the congressional intent expressed in § 4980H. The Treasury's three final regulations challenged here include Indian tribes (among others) as entities subject to the large employer mandate. *Compare, e.g.,* 26 C.F.R. § 301.6056–1(b)(7) (defining "governmental unit" to include Indian tribal governments) *with* 26 U.S.C. § 6056(e) (describing the reporting requirements for large employer governmental units to show compliance with the large employer mandate). Accordingly, the three final regulations challenged in this case accurately reflect Congress's intent that Indian tribes be subject to the large employer mandate.

### CONCLUSION AND ORDER

For the reasons discussed above, dismissal under Rule 12(b)(1) is warranted because the Court lacks jurisdiction over this action due to the Anti–Injunction Act and the Declaratory Judgment Act. Alternatively, if the AIA and DJA are not jurisdictional, dismissal pursuant to both under Rule 12(b)(6) is necessary. Additionally, dismissal is justified under Rule 12(b)(6) due to waiver. Finally, even if these threshold barriers to this lawsuit did not exist, dismissal under Rule 12(b)(6) is appropriate because the Tribe has failed to state a plausible claim upon which relief can be granted as the Department of Treasury's final regulations enact Congress's unambiguous intent.

**It is therefore ordered** that the Defendants' Motion to Dismiss (Doc. 26) is hereby **granted.** This lawsuit is hereby dismissed under 12(b)(1) for lack of jurisdiction and, in the alternative, under

12(b)(6) for failure to state a claim for relief upon which relief can be granted.