LUCERO, Circuit Judge.
This case comes to us on appeal for the second time. Steven and Naomi Dobbs’ state law claims against Anthem Blue Cross and Blue Shield (“Anthem”) were initially dismissed by the district court as preempted by the Employee Retirement Income Security Act (“ERISA”). On the first appeal, we vacated the court’s disposition, holding that the Dobbs’ claims would not be preempted if the insurance plan at issue qualified as a “governmental plan” under an amended statutory definition. We remanded to allow the district court to make that factual determination. On remand, the court determined that the plan qualified as a governmental plan under the amended definition, but dismissed the Dobbs’ claims on the ground that the amended definition does not apply retrospectively.
We exercise jurisdiction under 28 U.S.C. § 1291. Because we decided on the first appeal that the amended definition applied to the Dobbs’ claims, we reverse the district court’s contrary conclusion and remand for fact-finding consistent with this opinion.
I
In September 2004, the Dobbs filed suit against Anthem in Colorado state court. Their complaint alleged five state law causes of action arising from Anthem’s alleged failure to comply with the terms of a health insurance policy issued to Steven Dobbs through his employer, the Southern Ute Indian Tribe. Anthem removed the action to the United States District Court for the District of Colorado and contemporaneously filed a motion to dismiss based on ERISA preemption.
The district court granted Anthem’s motion in part. It dismissed four of the five claims, rejecting the Dobbs’ argument that the statutory exception from ERISA preemption for “governmental plan[s]” included those established by tribal governments. However, the court initially declined to dismiss the Dobbs’ fraud-as-to-benefits claim, reasoning that under Woodworker’s Supply, Inc. v. Principal Mutual Life Insurance Co., 170 F.3d 985 (10th Cir.1999), ERISA does not preempt state law claims predicated upon misrepresentations that induced plan participation. Id. at 991. The district court later reconsidered that ruling and dismissed the fraud claim as well. The Dobbs appealed.
While the first appeal was pending, Congress passed the Pension Protection Act of 2006 (“PPA”), Pub.L. No. 109-280, 120 Stat. 780. Section 906(a)(2)(A) of the PPA amends ERISA’s exception for governmental plans to:
include! ] a plan which is established and maintained by an Indian tribal government ... and all of the participants of which are employees of such entity substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities.
§ 906(a)(2)(A), 120 Stat. at 1051 (codified as amended at 29 U.S.C. § 1002(32)).
In deciding the Dobbs’ first appeal, this court noted that “[t]he amendment’s legislative history suggests that Congress ex *1279 panded the definition to clarify the legal ambiguity regarding the status of employee benefit plans established and maintained by tribal governments.” Dobbs v. Anthem Blue Cross & Blue Shield, 475 F.3d 1176, 1178 (10th Cir.2007) [hereinafter Dobbs I]. We recognized, however, that the amended definition of “governmental plan” may not cover the Dobbs’ plan “[bjecause the amended provision makes a distinction between ‘essential governmental functions’ and ‘commercial activities.’ ” Id. We accordingly remanded to the district court to engage in the necessary factual analysis, concluding that “[i]f the Dobbses’ benefit plan meets the new definition of governmental plan under § 1002(32), ERISA will not preempt their state-law causes of action against Anthem.” Id. at 1179.
On remand, the district court found that “the Dobbses’ plan meets the new definition of a governmental plan under ERISA, as amended.” However, it ruled that Congress intended § 906(a)(2)(A) of the PPA to apply only prospectively. It further rejected arguments that either the mandate rule or the law of the case doctrine required it to apply the amended definition of governmental plan to the events at issue. It thus reiterated its conclusion that ERISA preempted the Dobbs’ claims. This appeal followed.
II
A
We review de novo a district court’s dismissal for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Dias v. City & County of Denver, 567 F.3d 1169, 1178 (10th Cir.2009). ERISA preempts state law claims that “relate to any employee benefit plan.” 29 U.S.C. § 1144(a). However, it expressly exempts from preemption claims related to “governmental plants]” as defined in § 1002(32). See § 1003(b)(1). At the time of the events relevant to the Dobbs’ claims, § 1002(32) defined “governmental plan” as “a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing.” § 1002(32) (2002). Section 906(a)(2)(A) of the PPA, however, amended the definition of governmental plan to include certain plans established by tribal governments. See § 906(a)(2)(A), 120 Stat. at 1051. In this appeal, the Dobbs do not dispute that their insurance plan is an employee benefit plan within the meaning of ERISA or that four of their five claims “relate to” that plan for ERISA purposes.[1] They argue only that the amended definition of governmental plan should apply to the events at issue, even though they occurred before Congress amended the statute.
B
We must first determine whether Dobbs I decided that § 906 of the PPA applied retrospectively. If so, we are bound by that decision. In re Smith, 10 F.3d 723, 724 (10th Cir.1993). Moreover, if the first appeal decided the issue then the district court was bound by its determination under the law of the case doctrine, see Homans v. City of Albuquerque, 366 F.3d 900, 904 (10th Cir.2004), and under the general rule that a district court is bound by decisions made by its circuit court.
The law of the case doctrine provides that “when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.” Arizona v. Cali *1280 fornia, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). “The doctrine is based on sound public policy that litigation should come to an end and is designed to bring about a quick resolution of disputes by preventing continued re-argument of issues already decided” and to discourage forum-shopping by litigants. McIlravy v. Kerr-McGee Coal Corp., 204 F.3d 1031, 1035 (10th Cir.2000) (quotation omitted). Thus “the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal.” Id. at 1034.
The district court apparently concluded that the Dobbs I retrospectivity holding was not law of the case because the panel did not expressly reach the preemption issue. However, the law of the case doctrine applies to “issues previously decided, either explicitly or by necessary implication.” Guidry v. Sheet Metal Workers Int’l Ass’n, Local No. 9, 10 F.3d 700, 705 (10th Cir.1993) (citation omitted). An issue may be implicitly resolved by a prior appeal in three circumstances:
(1) resolution of the issue was a necessary step in resolving the earlier appeal; (2) resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal; and (3)the issue is so closely related to the earlier appeal its resolution involves no additional consideration and so might have been resolved but unstated.
McIlravy, 204 F.3d at 1036 (quotation omitted).
In Dobbs I, we decided by necessary implication that § 906 of the PPA applies retrospectively. First, resolution of the issue was a necessary step in resolving the earlier appeal. Noting that Congress had altered the definition of “governmental plan” after the resolution of proceedings in the district court, Dobbs I, 475 F.3d at 1177-78, we determined that the Dobbs’ plan might qualify as a governmental plan under the new language but remanded to the district court to engage in a “fact-specific analysis of the plan at issue,” id. at 1178. We concluded that “[i]f the Dobbses’ benefit plan meets the new definition of governmental plan under § 1002(32), ERISA will not preempt their state-law causes of action against Anthem.” Id. at 1179.
By expressly remanding only the fact-specific analysis and concluding that this analysis alone would determine if ERISA preempted the Dobbs’ claim, Dobbs I necessarily decided that the new language of the PPA applied to those claims.[2] Had we not made that determination, there would *1281 be no logical reason for us to remand only the fact-specific analysis; such analysis becomes relevant and determinative only if § 906 of the PPA applies retrospectively.[3] Thus, deciding the retrospectivity question was a “necessary step in resolving the earlier appeal.” McIlravy, 204 F.3d at 1036 (quotation omitted).
Second, the panel decided that § 906 applies retrospectively by necessary implication because a contrary “resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal.” McIlravy, 204 F.3d at 1036 (quotation omitted). To reiterate, we held in the prior appeal that “[i]f the Dobbses’ benefit plan meets the new definition of governmental plan under § 1002(32), ERISA will not preempt their state-law causes of action against Anthem.” Dobbs I, 475 F.3d at 1179. The district court found that the Dobbs’ plan meets the new definition, but held ERISA preempts their claim. In doing so, it directly contravened the instruction from Dobbs I and thus abrogated that decision.[4]
C
The Tenth Circuit recognizes three “exceptionally narrow” circumstances in which the law of the case doctrine does not apply: “(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice.” McIlravy, 204 F.3d at 1035 (internal quotation omitted). None apply here: No new evidence on the issue was presented to the district court, and there has not been a contrary applicable decision.
We further conclude that the pri- or panel’s decision was not clearly erroneous.[5] Anthem correctly argues that we *1282 presume an amendment does not apply retrospectively absent an indication of contrary intent by Congress. See Landgraf v. USI Film Prods., 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In determining whether a statute applies retrospectively, “the court’s first task is to determine whether Congress has expressly prescribed the statute’s proper reach.” Id. at 280, 114 S.Ct. 1483. If not, we ask whether applying the statute to the events at issue would have retroactive effects. Id. “Statutes are disfavored as retroactive when their application ‘would impair rights a party possessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed.’ ” Fernandez-Vargas v. Gonzales, 548 U.S. 30, 37, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006) (quoting Landgraf, 511 U.S. at 280, 114 S.Ct. 1483). “If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.” Landgraf, 511 U.S. at 280, 114 S.Ct. 1522.
Under Landgraf, we first look to whether Congress has expressly prescribed the proper reach of § 906. Congress has given contradictory indications. On the one hand, § 906(c) states that “[t]he amendments made by this section shall apply to any year beginning on or after the date of the enactment of this Act.” 120 Stat. at 1052. However, the Dobbs persuasively argue that this provision is merely intended to distinguish § 906 from numerous other sections of the PPA that became effective beginning at subsequent “plan years,” and thus does not address the issue of retrospectivity at all. See, e.g., PPA § 101(d), 120 Stat. at 789; PPA § 103(c), 120 Stat. at 816; PPA § 110(e), 120 Stat. at 820.
Moreover, § 906(b) states that it is merely a “clarification” rather than a substantive change in the law — seemingly contradicting § 906(c). Although we have acknowledged that it is “hazardous ... to assume from the enactment of a ‘clarifying’ amendment that Congress necessarily was merely restating the intent of the original enacting Congress,” Fowler v. Unified Sch. Dist., No. 259, 128 F.3d 1431, 1436 (10th Cir.1997), a true clarification applies retrospectively, see, e.g., United States v. Aptt, 354 F.3d 1269, 1276 (10th Cir.2004) (“[A] subsequent amendment to the Guidelines can sometimes be given retroactive effect if the changes are clarifying rather than substantive.” (quotation omitted)); Andrews v. Deland, 943 F.2d 1162, 1172 n. 7 (10th Cir.1991) (A court’s decision may apply retrospectively when it is a clarification of a rule rather than a change in the substantive law). “When Congress enacts a statute using a phrase that has a settled judicial interpretation, it is presumed to be aware of the prior interpretation.” Ford v. Ford Motor Credit Corp. (In re Ford), 574 F.3d 1279, 1283 (10th Cir.2009); see also Comm’r v. Keystone Consol. Indus., 508 U.S. 152, 159, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993). Congress’ use of the term “clarification” therefore indicates an intent that the amendment apply retrospectively. Due to the contrary indications from Congress, we cannot conclude Congress clearly and expressly prescribed the proper reach of § 906.[6] Given the *1283 holding of Dobbs I, we may not hold that § 906 applies only prospectively absent an unambiguous statutory command. See MeIlravy, 204 F.3d at 1035.
We therefore turn to the second step of the Landgraf analysis: We must ask if § 906 of the PPA would have retroactive effect if applied retrospectively.[7] That is, we examine whether the amendment “would impair rights a party possessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed.” Landgraf 511 U.S. at 280, 114 S.Ct. 1522. Notably, “[a] statute does not operate [retroactively] merely because it is applied in a case arising from conduct antedating the statute’s enactment or upsets expectations. Rather, the court must determine whether the new provision attaches new legal consequences to events completed before its enactment.” Hem v. Maurer, 458 F.3d 1185, 1190 (10th Cir.2006).
Our precedent exempting Indian tribes from the preemptive reach of federal regulatory schemes leads us to conclude that the prior panel’s determination that ERISA was always intended to exclude tribal plans was not clearly erroneous. “Tribes retain those attributes of inherent sovereignty not withdrawn either expressly or necessarily as a result of their status” until Congress acts to withdraw those powers. NLRB v. Pueblo of San Juan, 276 F.3d 1186, 1192 (10th Cir.2002) (en banc). This respect for sovereignty has lead to the “well-established canon of Indian law that ‘statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit.’ ” Id. at 1191 (quoting Montana v. Blackfeet Tribe, 471 U.S. 759, 766, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985)). “The canon applies to other statutes, even where they do not mention Indians at all.” Pueblo of San Juan, 276 F.3d at 1191-92.
In this circuit, respect for Indian sovereignty means that federal regulatory schemes do not apply to tribal governments exercising their sovereign authority absent express congressional authorization.[8] Compare Pueblo of San Juan, 276 F.3d at 1200 (National Labor Relations Act does not preempt tribal government from enacting right-to-work ordinance), EEOC v. Cherokee Nation, 871 F.2d 937, 939 (10th Cir.1989) (Age Discrimination in Employment Act does not apply to Indian tribes), and Donovan v. Navajo Forest Prods. Indus., 692 F.2d 709, 714 (10th Cir.1982) (Occupational Safety and Health Act does not apply to business operated by an Indian tribe in part because its application would dilute principles of tribal self-government), with Osage Tribal Council ex rel. Osage Tribe of Indians v. Dep’t of Labor, 187 F.3d 1174, 1180-81 (10th Cir.1999) (Congress expressly abrogated tribal sovereign immunity in Safe Drinking Water Act). Although our early cases relied *1284 in part on treaties that expressly protected Indian tribes’ sovereignty, see, e.g., Donovan, 692 F.2d at 711-12, we later recognized that a treaty was not a necessary prerequisite to exemption, see, e.g., Pueblo of San Juan, 276 F.3d at 1191.
Applying certain federal regulatory schemes to Indian tribes would impinge upon their sovereignty by preventing tribal governments from freely exercising their powers, including the “sovereign authority to regulate economic activity within their own territory.” Id. at 1192-93. For this reason, ERISA would not apply to insurance plans purchased by tribes for employees primarily engaged in governmental functions unless Congress expressly or necessarily preempted Indian tribal sovereignty. Applying ERISA to such plans would prevent tribal governments from purchasing insurance plans for governmental employees in the same manner as other government entities, thus treating tribal governments as a kind of inferior sovereign. We do not assume Congress intended to infringe on Indian tribal sovereignty in this manner absent an express statement or strong evidence of congressional intent.
Anthem argues that the pre-PPA definition of governmental plan could not have covered tribal plans because a tribe is not the “Government of the United States, ... the government of any State or political subdivision thereof, or ... [an] agency or instrumentality of any of the foregoing.” § 1002(32) (2002). It is true that an Indian tribal government does not fit into any of the articulated categories. However, we have held that “normal rules of construction do not apply when ... matters involving Indians[ ] are at issue.” Cherokee Nation, 871 F.2d at 939; see also Blackfeet Tribe, 471 U.S. at 766, 105 S.Ct. 2399; Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 152, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982). “[I]n cases where ambiguity exists,” including those where there is silence with respect to Indian tribal governments, “and there is no clear indication of congressional intent to abrogate Indian sovereignty rights ..., the court is to apply the special canons of construction to the benefit of Indian interests.” Cherokee Nation, 871 F.2d at 939. Thus, for example, we interpreted the Age Discrimination in Employment Act’s express exemption for “the United States or a corporation wholly owned by the Government of the United States,” 29 U.S.C. § 630(b), to exempt Indian tribes. Cherokee Nation, 871 F.2d at 939. Similarly, we held that Congressional silence exempted Indian tribes from the National Labor Relations Act. Pueblo of San Juan, 276 F.3d at 1200.[9]
*1285 We thus conclude that § 906(a)(2)(A) is at least arguably a clarification rather than a substantive amendment, and thus applies retrospectively to the events at issue. We recognize that Anthem’s position may well have carried the day had the retrospectivity of § 906 been a matter of first impression, and the dissent reaches this conclusion after engaging in a de novo analysis. However, because the prior appeal determined that § 906 of the PPA applies retrospectively and none of the Mcllravy exceptions to the law of the case doctrine apply, we are bound by the holding of Dobbs I. See McIlravy, 204 F.3d at 1035-36.
D
Our conclusion that § 906(a)(2)(A) of the PPA applies retrospectively does not resolve the ultimate ERISA preemption question. That question turns on whether the Dobbs’ plan is a “governmental plan” under 29 U.S.C. § 1002(32), as amended. Although the district court concluded that the Dobbs’ plan fell within the amended definition, it applied an erroneous interpretation of § 1002(32). We therefore remand again for the district court to make the factual determination of whether the Dobbs’ plan qualifies as a governmental plan using the proper definition.
As amended, § 1002(32) defines “governmental plan” to include “a plan which is established and maintained by an Indian tribal government,” but only when “all of the participants” in the plan are employees “substantially all of whose services as such an employee are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function).” Thus a plan qualifies as a governmental plan only if it is established and maintained by an Indian tribal government and all of the participants are employees primarily engaged in essential governmental functions rather than commercial activities.
On remand from Dobbs I, the district court ruled that the Dobbs’ plan was a “governmental plan” because it was “established and maintained by an Indian tribal government” and Steven Dobbs’ job duties—assisting in the management of the Tribal treasury—related to essential government functions. This analysis misunderstands the test under § 1002(32). Rather than looking to Mr. Dobbs’ duties, the court must determine whether all plan participants are employees “substantially all of whose services ... are in the performance of essential governmental functions but not in the performance of commercial activities (whether or not an essential government function).” § 1002(32).
Unfortunately, we cannot resolve this issue on appeal. As noted in Dobbs I, “[t]he determination of whether a tribal plan qualifies as a governmental plan under § 1002(32) requires a fact-specific analysis of the plan at issue and the nature of its participants’ activities.” 475 F.3d at 1178. As on the first appeal, we must remand to allow the district court to determine whether the Dobbs’ plan qualifies as a governmental plan under § 1002(32).
Ill
The Dobbs further argue that ERISA does not preempt their fraud-as-to-benefits claim under the rule set forth in Woodworker’s. There, we held that ERISA preemption does not extend to employers’ claims against insurance companies that arise from pre-contractual misrepresentations of plan terms. Woodworker’s, 170 F.3d at 989-90. In such cases, the employer sues the insurance company “in its role as a seller of insurance, not as an administrator of an employee benefits plan.” Id. at 991. *1286 Moreover, at the time of the fraud, the insurance company could not yet be a plan fiduciary, one of the four principal ERISA entities, because the employer had not yet purchased a plan. Id.
Arguably, this reasoning could apply to an individual employee’s claim against a plan fiduciary that misrepresented the terms of a plan: At the time of the alleged misrepresentation, the insurance company could be acting in its role as a seller of insurance, and the employee would not be a plan beneficiary if she had not yet purchased the plan.
Nevertheless, we conclude that Woodworker’s is inapposite here. The Dobbs initially styled their fraud-as-to-benefits claim similarly to the claim in Woodworker’s, asserting that Anthem “represented that its Blue Preferred policy allowed insureds to see any Blue Cross Blue Shield Preferred Provider and receive coverage at in-network levels,” but that “[t]he statements were false.” However, the Dobbs further allege in this claim that “Anthem refused to provide the highest level of benefits under the Poliey[] even when the Dobbs met Anthem’s requirements and condition[s].” In other words, the improper conduct for which the Dobbs seek relief is not Anthem’s misrepresentation of the terms of the insurance plan, but Anthem’s failure to abide by those terms. The Dobbs fail to cite any discrepancies between Anthem’s representations and the terms of the plan. Instead, they claim only that Anthem promised to provide the “highest level of benefits” at “in-network” rates to plan members who used Preferred Providers, but did not actually do so. Indeed, the basis of their claim for bad faith breach of an insurance contract is that “[u]nder the policy, Anthem should have made an in-network determination regarding [the Dobbs’ son’s] treatment ... and should have paid the claims at in-network levels.”
As a result, Woodworker’s does not apply to the Dobbs’ claims. If their plan is not a governmental plan within the meaning of § 1002(32), then the Dobbs’ claims are subject to ERISA preemption.
IV
For the foregoing reasons, we REVERSE the decision of the district court and REMAND for factfinding consistent with this opinion.

. The Dobbs contend their fraud-as-to-benefits claim is not preempted under Woodworker's, 170 F.3d at 989-91. We address that contention in Part III, infra.

. The dissent contends that our previous decision directed the district court not only to conduct the fact-specific analysis, but also to "consider in the first instance whether state or federal law applied in light of the PPA.” (Dissenting Op. 1288.) To the extent the dissent is asserting that we remanded the retrospectivity question, it is incorrect. We instructed the district court to consider whether ERISA preempted the Dobbs’ state law claims applying the amended definition of governmental plan. See Dobbs I, 475 F.3d at 1178 ("Based on the Dobbses' complaint, we do not have enough information to determine whether the benefit plan meets the requirements of § 1002(32) and therefore remand the case to the District Court for consideration in light of the amended definition." (emphasis added)); id. at 1179 ("If the Dobbses’ benefit plan meets the new definition of governmental plan under § 1002(32), ERISA will not preempt their state-law causes of action against Anthem.” (emphasis added)). We did not issue a broad mandate to reconsider our determination that the PPA applies retrospectively.
Contrary to the dissent's assertions, our present opinion does not rely exclusively on a single sentence from the prior panel opinion to reach this conclusion. Although our analysis does focus on the prior panel’s explicit directive to the district court, our interpretation considers and is consistent with all the language in the prior decision. In contrast, *1281 the dissent’s interpretation is plainly inconsistent with the prior panel's express directive and its remand to conduct the fact-specific analysis.

. The dissent asserts that the statement, "If the Dobbses’ benefit plan meets the new definition of governmental plan under § 1002(32), ERISA will not preempt their state-law causes of action against Anthem,” 475 F.3d at 1179, is "best understood as dicta” and thus not subject to the law of the case doctrine. (Dissenting Op. 1288.) Under the dissent’s reading, Dobbs I “explicitly did not reach the preemption issue.” (Id.)
Like the district court, the dissent conflates § 906's retrospectivity with the fact-bound question of whether the Dobbs' plan qualifies as a governmental plan under the new definition of that term. We answered the first question in the affirmative, remanding only the fact-based analysis "to the District Court for consideration in light of the amended definition.” Dobbs I, 475 F.3d at 1178.

. The dissent disagrees with our determination that the district court abrogated the Dobbs I decision, concluding that the “the district court did what we directed it to do — it considered whether federal law applied in light of the enactment of the PPA." (Dissenting Op. 1288.) But, as discussed in footnotes 2 and 3, supra, Dobbs I did not remand that broad question to the district court. Rather, it instructed the district court that ERISA will not preempt the Dobbs’ claims ”[i]f the Dobbses’ benefit plan meets the new definition of governmental plan under § 1002(32).” 475 F.3d at 1179. By ignoring this mandate, the district court abrogated the prior panel decision.

.We question whether we may permissibly endorse a district court order that rejects a prior panel decision as clearly erroneous. See In re Smith, 10 F.3d at 724 ("We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court.”). However, because the Dobbs I holding was not clearly erroneous, we need not attempt to reconcile Mcllravy and In re Smith. The dissent does not attempt to distinguish In re Smith, but appears willing to ignore a prior panel decision as clearly erroneous. (See Dissenting Op. 1288-89 & n.3.)

. The dissent contends that § 906(b) of the PPA should not impact our analysis of § 906(a). (Dissenting Op. at 1290-91.) We disagree. Section 906(b) expressly states that the textual changes it makes are clarifying rather than substantive. Our reasoning does not rely on any particular clarification made by that subsection, but instead highlights the tension between § 906(b) and § 906(c) on the question of whether § 906 should apply retrospectively. This tension prevents us from concluding that Congress clearly and expressly prescribed the reach of § 906 as a whole.

. In the interests of clarity, we will differentiate between statutes that operate retrospectively and statutes that operate retroactively. For our purposes, a retrospective statute applies to pre-enactment events. A retroactive statute is one that attaches legal rights, duties, responsibilities, or consequences to pre-enactment events. The cases to which we cite do not make this distinction and generally use the terms interchangeably.

. The district court cited to Phillips Petroleum Co. v. U.S. Environmental Protection Agency, 803 F.2d 545, 556 (10th Cir.1986), for the proposition that "[fjederal statutes of general application apply to Native Americans and their property interests.” We have distinguished, however, between cases in which an Indian tribe exercises its property rights and cases in which it "exercise[s] its authority as a sovereign.” Pueblo of San Juan, 276 F.3d at 1199. In the first set of cases, Phillips Petroleum applies; in the second, it does not. Pueblo of San Juan, 276 F.3d at 1199.

. Anthem notes that other courts interpreted the pre-PPA definition of “governmental plan” to not cover Indian tribal governments. See Lumber Indus. Pension Fund v. Warm Springs Forest Prods. Indus., 939 F.2d 683, 685-86 (9th Cir.1991); Smart v. State Farm Ins., Co., 868 F.2d 929, 936 (7th Cir.1989). Given the Tenth Circuit presumption against extending federal regulatory schemes to Indian tribal governments absent express authorization or strong evidence of congressional intent, however, it is at least plausible that a pre-amendment panel of this court would have held that the exemption for "governmental plants]” covered Indian tribal governments.
Anthem also argues that, in a 2006 Notice, the Internal Revenue Service (“IRS”) concluded that § 906 of the PPA substantively changed, rather than clarified, the definition of governmental plan. See I.R.S. Notice 2006-89, 2006-2 C.B. 772. Although the Notice states that § 906 "changed” the definition of governmental plan, the Notice gives no indication that the IRS actually considered whether the amendment was a clarification or whether it should apply retrospectively. Even if it did, we need not defer to the IRS' interpretation of a statute it does not administer. Francis v. Reno, 269 F.3d 162, 168 (10th Cir.2001).