**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 8, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHN MIGUEL SWAN,

    Defendant - Appellant.

No. 25-6032
(D.C. No. 5:21-CR-00028-F-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **McHUGH**, and **EID**, Circuit Judges.
_____

Defendant-Appellant John Miguel Swan appeals his conviction and sentence for possessing ammunition as a convicted felon in violation of 18 U.S.C. § 922(g)(1). Mr. Swan contends that his conviction violates the Second Amendment and that the district court imposed a substantively unreasonable sentence. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

## I.   BACKGROUND

### A.   *Factual History*

On September 9, 2020, Oklahoma law enforcement officers went to a residence where Mr. Swan was located to execute a felony warrant against him after he was accused of domestic assault and battery against the woman he was dating. When the officers arrived, they saw Mr. Swan run from the backyard into the residence. The officers knocked on the front door and instructed Mr. Swan to open it several times. Eventually he did, and the officers brought him outside and "placed him on the ground until more officers were able to assist." ROA Vol. III at 45.

As the officers brought Mr. Swan to the ground, "a loaded 9mm pistol magazine with 17 live rounds fell from [his] pants pocket and landed on the ground near the officer's feet." *Id.* The officers arrested Mr. Swan and transported him to a detention center.

### B.   *Procedural History*

#### 1.   Indictment and Guilty Plea

A grand jury indicted Mr. Swan on one count of possessing ammunition as a convicted felon under 18 U.S.C. § 922(g)(1). Following his counsel's advice, Mr. Swan pleaded guilty. His plea counsel later withdrew from representation, and the district court appointed Mr. Swan a new attorney.

Several months later, Mr. Swan wrote a letter to the district court stating that he was innocent but that his initial counsel forced him to enter a guilty plea out of "blatant force and ineffective assistance of counsel." ROA Vol. I at 99. The district

judge construed Mr. Swan's letter as a motion to withdraw his plea and denied the motion because Mr. Swan did not present "a credible claim of innocence." *Id.* at 344.

Mr. Swan subsequently asked the district court to reconsider the denial of his motion to withdraw his guilty plea, in part because the Supreme Court had recently issued *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), a case in which the Court laid out a new two-step framework that governs whether a firearm regulation violates the Second Amendment. The district court again denied Mr. Swan's motion.

The district court proceeded to sentence Mr. Swan to a 120-month term of imprisonment, to be followed by three years of supervised release.

## 2.     Mr. Swan's First Appeal

Mr. Swan appealed the district court's denial of his motion to withdraw his plea. He relied on two of the relevant plea-withdrawal factors: "whether the plea is knowing and voluntary" and "whether the defendant has asserted his innocence." Brief for Appellant at 15, *United States v. Swan (Swan I)*, 91 F.4th 1052 (10th Cir. 2024) (No. 22-6132) (quoting *United States v. Hamilton*, 510 F.3d 1209, 1214 (10th Cir. 2007)); *see also id.* at 15–32 (focusing the appellate argument on these two plea-withdrawal factors).

First, Mr. Swan argued that he did not knowingly and voluntarily enter his guilty plea because his counsel advised him shortly before the change-of-plea hearing "that the jury at his trial would not include any persons of color." *Id.* at 18. Accordingly, as a black man, "he felt coerced to plead guilty in part because he did

not think he would receive a fair trial or be believed." *Id.* at 18–19. Second, Mr. Swan argued he was legally innocent because § 922(g)(1) was unconstitutional, and because the district court denied the parties the full opportunity to litigate the constitutionality of the statute under the newly decided *Bruen* framework by denying his motion to withdraw his plea. Mr. Swan asked us to vacate his guilty plea and remand for further proceedings on the *Bruen* issue. But he also argued that we could "review the question of whether 18 U.S.C. § 922(g)(1) is unconstitutional in the first instance." *Id.* at 27–28.

We vacated Mr. Swan's conviction and remanded for further proceedings. *Swan I*, 91 F.4th at 1059. Specifically, we held that Mr. Swan's plea counsel's statement "that all minorities would be removed from his jury and that his case would be tried before exclusively white jurors" was a material misrepresentation sufficient to render Mr. Swan's guilty plea involuntary and unknowing. *Id.* at 1053–54. We based our decision to vacate Mr. Swan's conviction exclusively on his knowing-and-voluntary argument and not "on other plea-withdrawal factors, including factual and legal innocence." *Id.* at 1059 n.7.

However, we also referenced Mr. Swan's argument that *Bruen* rendered § 922(g)(1)'s felon-in-possession prohibition unconstitutional as applied to his ammunition-only conviction. *Id.* In Footnote 7, we stated that to the extent Mr. Swan sought "broader relief than simply withdrawing his plea (he asserts that his statute of conviction is unconstitutional), we [were] bound to follow our recent decision in *Vincent v. Garland* [*(Vincent I)*], 80 F.4th 1197 (10th Cir. 2023)." *Id.* We explained,

4

"*Vincent* forecloses his position that the felon-in-possession statute is unconstitutional under *Bruen*, and he now maintains that argument solely for preservation purposes."[1] *Id.*

### 3.    Proceedings after Remand

On remand, Mr. Swan moved to dismiss the indictment. He again argued that § 922(g)(1) is unconstitutional under *Bruen's* two-step framework both on the statute's face and as applied to his conviction because he "never actually possessed a firearm." ROA Vol. I at 479. The Government opposed Mr. Swan's motion on the merits, and it argued that we already held in *Swan I* that our prior precedent in *Vincent I* foreclosed Mr. Swan's Second Amendment challenge. The district court denied Mr. Swan's motion to dismiss. The district judge agreed with the Government that Footnote 7 in Mr. Swan's first appeal resolved his Second Amendment challenge. The district judge also rejected Mr. Swan's argument on the merits.

---

[1] In *Vincent v. Garland (Vincent I)*, we rejected the argument that *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), abrogated our prior precedent upholding "the constitutionality of the ban on felons' possession of firearms." 80 F.4th 1197, 1202 (10th Cir. 2023) (citing *United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009)). We also made clear that our precedent covers "*any* convicted felon's possession of a firearm" and that *Bruen* does not mandate "felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *Id.* (quoting *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023)). The Supreme Court subsequently vacated *Vincent I* and remanded it for reconsideration after applying *Bruen* for the first time in *United States v. Rahimi*, 602 U.S. 680 (2024). *See Vincent v. Garland (Vincent II)*, 144 S. Ct. 2708 (2024) (mem.). On remand, we held that *Rahimi* did not change our existing precedent, so we readopted *Vincent I* and affirmed § 922(g)(1)'s constitutionality as applied to any convicted felon who possesses a firearm. *Vincent v. Bondi (Vincent III)*, 127 F.4th 1263, 1266 (10th Cir. 2025).

Mr. Swan proceeded to trial. The jury found him guilty of possessing ammunition as a convicted felon in violation of § 922(g)(1).

**4.      Presentence Report**

A probation officer filed a presentence report ("PSR") that calculated Mr. Swan's advisory sentencing range under the United States Sentencing Guidelines and provided information for the district court to consider when deciding Mr. Swan's sentence. The PSR assigned Mr. Swan an offense level of 20 and a criminal history category of VI, producing an advisory Guidelines range of 70 to 87 months in prison.

The PSR detailed Mr. Swan's prior criminal conduct. It indicated that Mr. Swan had been convicted of seven prior felonies, four of which were felon-in-possession offenses. The PSR also outlined Mr. Swan's lengthy history of domestic violence. On four instances, Mr. Swan pleaded guilty or no contest to assault and battery, assault and battery for domestic abuse, or breaking and entering in a situation that involved underlying facts related to domestic violence. The PSR described Mr. Swan's conduct underlying these convictions, which included striking a woman in the face, pushing and punching a woman, shoving a woman against a refrigerator and throwing her over a sofa, and kicking in the door of a woman who had a protective order against him.

The PSR also described instances of Mr. Swan's past conduct that did not result in convictions, but the district court considered only one such instance for sentencing purposes—the incident leading to his arrest on the felon-in-possession charge at issue here. In that instance, Mr. Swan's pregnant girlfriend told officers that

Mr. Swan had "put his hand around her neck and squeezed to the point where she could not breathe" while "repeatedly punch[ing] her on the left side of her face." ROA Vol. III at 60. Mr. Swan was charged with state-law domestic assault and battery charges, but the state dropped the charges due to the federal felon-in-possession case at issue in the instant appeal. *Id.* at 60–61.

### 5.    Sentencing

Before Mr. Swan's sentencing hearing, the Government requested an upward variance from Mr. Swan's 70- to 87-month Guidelines range, and Mr. Swan requested a downward one. The district judge applied an upward variance and sentenced Mr. Swan to the statutory maximum penalty of 120 months in prison. In doing so, the district judge considered Mr. Swan's detailed history of violent conduct. With the exception of the incident described above, the judge considered reports of domestic violence only if they resulted in a guilty or no contest plea because, in the unadjudicated cases, the victims' or witnesses' "accounts [had] not been tested in the way we ordinarily look for accounts of serious criminal conduct to be tested." ROA Vol. V at 325.

The district judge explained that he considered the nature and circumstances of the offense, Mr. Swan's history and characteristics, and the need for incapacitation and deterrence to be the most "eye-catching" factors in determining Mr. Swan's sentence. *Id.* at 348. The district judge noted that the nature and circumstances of the offense—the mere possession of ammunition—weighed in Mr. Swan's favor because "the intrinsic egregiousness of simply possessing ammunition after former conviction

of a felony is not . . . toward the egregious end of the scale." *Id.* at 349. Rather, "it takes other facts to put the case, as a whole, toward the egregious end of the scale." *Id.*

But the district judge concluded that Mr. Swan's history and characteristics supported a higher sentence than the nature of his offense would suggest. The judge primarily focused on Mr. Swan's history of brutality toward women, the seriousness of the injuries Mr. Swan had inflicted on others, and the vulnerability of the victims he had harmed. The judge also observed "a strong element of lawlessness in Mr. Swan's approach to living day-to-day life" based on his "several serious felony convictions" and that "Mr. Swan had probably been told a hundred times that he could not possess a firearm or ammunition." *Id.* at 350. Finally, the judge noted that the need for incapacitation supported sentencing Mr. Swan to a 120-month term of imprisonment. He stated, "Mr. Swan has left a trail of women who suffered horribly at his hands, and I am aware of nothing other than incapacitation that can make that stop or interrupt the course of conduct that goes back a good many years. *Id.* at 350–51.

Mr. Swan timely appealed his conviction and sentence.

## II.    DISCUSSION

### A.    *Law of the Case*

Mr. Swan argues that § 922(g)(1), as applied to his possession of mere ammunition, violates the Second Amendment because the Government cannot point to a historical analogue that prohibited non-violent felons from possessing *only*

ammunition and not a firearm. The Government contends that the law-of-the-case

doctrine forecloses Mr. Swan's Second Amendment challenge because we rejected it

in his first appeal. We agree.

In *Swan I*, after we held that the district court abused its discretion in denying

Mr. Swan's motion to withdraw his guilty plea, we explained:

> We reach this conclusion based solely on the knowing-and-voluntary requirement and thus need not consider Swan's arguments on other plea-withdrawal factors, including factual and legal innocence. But we pause to note that to the extent that Swan's legal-innocence argument seeks broader relief than simply withdrawing his plea (he asserts that his statute of conviction is unconstitutional), we are bound to follow our recent decision in *Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023). *See United States v. Lira-Ramirez*, 951 F.3d 1258, 1260–61 (10th Cir. 2020) ("We must generally follow our precedents absent en banc consideration."). As Swan acknowledges, *Vincent* forecloses his position that the felon-in-possession statute is unconstitutional under *Bruen*, and he now maintains that argument solely for preservation purposes.

*Swan I*, 91 F.4th at 1059 n.7.

To place Footnote 7 in context, we provide a brief explanation of the Second

Amendment landscape regarding felon-in-possession regulations. In *District of*

*Columbia v. Heller*, 554 U.S. 570, 592 (2008), the Supreme Court held that the

Second Amendment "guarantee[s] the individual right to possess and carry weapons

in case of confrontation." 554 U.S. 570, 592 (2008). Then, in *Bruen*, the Court set

forth a two-step burden-shifting framework that guides the analysis of whether a

firearm regulation infringes upon that right, *see* 597 U.S. at 17, which the Court

further clarified in *United States v. Rahimi*, 602 U.S. 680 (2024). Under this

framework, the regulation's challenger must first establish that the Second

9

Amendment's text encompasses his conduct (i.e., ammunition possession). *Bruen*, 597 U.S. at 17. If this burden is met, the government must then show that "the challenged regulation is consistent with the principles that underpin our regulatory tradition." *Rahimi*, 602 U.S. at 692; *see also Bruen*, 597 U.S. at 17.

Before *Bruen*, we upheld § 922(g)(1)'s prohibition of firearm possession by convicted felons based on the Supreme Court's dicta in *Heller*, which noted that the opinion did not "cast doubt on longstanding prohibitions on the possession of firearms by felons." *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009) (quoting *Heller*, 554 U.S. at 626). And after *Bruen*, we confirmed that our prior precedent upholding § 922(g)(1) remained good law regardless of whether the defendant's prior felony conviction was for a violent or non-violent offense. *See Vincent I*, 80 F.4th at 1202; *see also Vincent v. Bondi (Vincent III)*, 127 F.4th 1263, 1265–66 (10th Cir. 2025) (reaffirming *Vincent I*).

The parties now dispute whether Footnote 7 in *Swan I*, which rejects Mr. Swan's position that § 922(g)(1) is unconstitutional, is the law of the case or mere dicta. "The law-of-the-case doctrine is one of several doctrines . . . that limit a litigant to one bite at the apple." *Harris v. City Cycle Sales, Inc.*, 112 F.4th 1272, 1278 (10th Cir. 2024). It provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Moore*, 96 F.4th 1290, 1301 (10th Cir. 2024) (quotation marks omitted). Once we make a decision in a lawsuit, we will ordinarily follow that decision in the parties' subsequent appeals. *Dobbs v. Anthem Blue Cross & Blue*

10

*Shield*, 600 F.3d 1275, 1280 (10th Cir. 2010). "This principle applies to all issues previously decided, either explicitly or by necessary implication." *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1288 (10th Cir. 2024) (quotation marks omitted). We generally only deviate from the law of the case if one of three circumstances is present: "(1) new and different evidence; (2) intervening controlling authority; or (3) a clearly erroneous prior decision which would work a manifest injustice." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011).

However, the law-of-the-case doctrine does not require us to follow a prior panel's dicta. *Moore*, 96 F.4th at 1300. "Dicta are statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand." *Thompson v. Weyerhaeuser Co.*, 582 F.3d 1125, 1129 (10th Cir. 2009) (internal quotation marks omitted); *see also United Food & Com. Workers Union, Loc. 1564 of N.M. v. Albertson's, Inc.*, 207 F.3d 1193, 1199 (10th Cir. 2000) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925))).

Contrary to Mr. Swan's argument, we decline to interpret Footnote 7 in *Swan I* as mere dicta. In Mr. Swan's first appeal, he expressly invited us to decide whether his § 922(g)(1) conviction was unconstitutional under *Bruen*. *See* Brief for Appellant at 27–28, *Swan I*, 91 F.4th 1052 (No. 22-6132). We identified the issue that he raises here—whether Mr. Swan's "statute of conviction is unconstitutional." *See Swan I*,

11

91 F.4th at 1059 n.7. Then, we rejected his position because *Vincent I* foreclosed it. *Id.* It is implicit in this conclusion that *Vincent I*—which upholds § 922(g)(1) as applied to convictions for firearm possession—applies to Mr. Swan's conviction for ammunition possession, thus defeating the argument he has raised in this appeal attempting to distinguish the two. *See Dobbs*, 600 F.3d at 1280 (explaining that the law-of-the-case doctrine applies to issues decided by necessary implication); *United States v. Rohde*, 159 F.3d 1298, 1302 (10th Cir. 1998) (noting that the language "we conclude that the facts of this case are governed by *Witte*" suggested a prior decision was a holding (citing *Witte v. United States*, 515 U.S. 389 (1995))).

The binding nature of our holding in *Swan I* does not change simply because we did not address each of the arguments Mr. Swan raised in this appeal regarding the differences between firearms and ammunition. *See Thompson*, 582 F.3d at 1130 ("The fact that our earlier decisions do not address particular arguments that [the appellant] now advances does not transform the legal conclusions that we reached in those cases from holdings into dicta.").

Nor does the language "need not consider" render the footnote dicta. We noted in *Swan I* that because we held that the district court abused its discretion when it denied Mr. Swan's motion to withdraw his guilty plea "based solely on the knowing-and-voluntary requirement," we "need[ed] not consider" Mr. Swan's other arguments, such as his legal innocence, on *that* issue. *Swan I*, 91 F.4th at 1059 n.7. That language, however, did not refer to the rest of Footnote 7, which focused on the "broader relief" Mr. Swan sought under the Second Amendment, separate from his

12

argument regarding the district court's denial of his plea-withdrawal motion. *See id.* Further, we clarified that, after *Swan I,* Mr. Swan maintained his Second Amendment argument "solely for preservation purposes." *Id.* This language is inconsistent with the notion that we anticipated Mr. Swan could then move to dismiss his indictment on the same basis after withdrawing his guilty plea on remand. We have already rejected the argument Mr. Swan raises in this appeal, and we are not persuaded that he should have the opportunity to relitigate it here. *See Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1241–42 (10th Cir. 2016) (explaining that the law-of-the-case doctrine precludes relitigating arguments that have already been decided, especially on the "same issues that the litigant could have but failed to present the first time around"). We therefore decline to reconsider this argument because it is law of the case.

### B.    *Sentencing*

Mr. Swan also argues that his 120-month sentence is substantively unreasonable because the district court (1) gave excessive weight to prior conduct that was either unproven or unrelated to the instant offense, and (2) failed to account for unwarranted sentencing disparities between Mr. Swan and similarly situated defendants. We disagree and conclude that the district court did not abuse its discretion.

### 1.    Standard of Review

Sentencing courts "must impose sentences that are 'sufficient, but not greater than necessary, to comply with the four identified purposes of sentencing: just

13

punishment, deterrence, protection of the public, and rehabilitation.'" *United States v. Guevara-Lopez*, 147 F.4th 1174, 1183 (10th Cir. 2025) (quoting *Dean v. United States*, 581 U.S. 62, 67 (2017) (internal quotation marks omitted)). "Section 3553(a) requires sentencing courts to consider seven factors, including 'the nature and circumstances of the offense and the history and characteristics of the defendant' and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)). Sentences must be substantively and procedurally reasonable. *United States v. Cookson*, 922 F.3d 1079, 1091 (10th Cir. 2019).

We review the substantive reasonableness of a sentence for abuse of discretion. *Id.* at 1090. "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009) (quotation marks omitted). A sentence's substantive reasonableness "turns on whether the length of the sentence is reasonable given all the circumstances of the case in light of the" § 3553(a) factors. *United States v. Crosby*, 119 F.4th 1239, 1248 (10th Cir. 2024) (internal quotation marks omitted). "Of course, the district court need not afford equal weight to each § 3553(a) factor, and we will defer on substantive-reasonableness review not only to a district court's factual findings but also to its determinations of the weight to be afforded to such findings." *Cookson*, 922 F.3d at 1094 (internal quotation marks and citations omitted). But "we have cautioned against excessive reliance on a single factor in sentencing." *Id.* at 1093.

14

When a district court imposes a sentence outside the Guidelines range, "we give due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance." *Id.* at 1090–91 (internal quotation marks and brackets omitted). In doing so, "we recognize that the district court 'is in a superior position to find facts and judge their import under § 3553(a) in the individual case." *Crosby*, 119 F.4th at 1246 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). That said, "a major variance should have a more significant justification than a minor one." *Id.* (quotation marks and brackets omitted).

## 2.    Mr. Swan's Prior Conduct

Mr. Swan first argues his sentence is substantively unreasonable because the district court imposed a major upward variance based on "unproven allegations . . . relating to prior incidents of domestic violence unrelated to the offense of conviction." Appellant's Br. at 46. He contends that the district court placed excessive weight on his history of domestic violence, resulting in a sentence that punished him for conduct other than his possession of ammunition as a convicted felon.

"It is entirely appropriate for a district court to consider reliable information about a defendant's criminal history when deciding whether to impose an above-Guidelines sentence." *United States v. Ruiz*, 125 F.4th 1342, 1351 (10th Cir. 2025). Nonetheless, "a district court can abuse its discretion by varying upwards solely because of past conduct unrelated to the offense of conviction." *United States v. Vazquez-Garcia,* 130 F.4th 891, 901 (10th Cir. 2025).

15

Here, the district court did not abuse its discretion by imposing an upward variance to Mr. Swan's sentence based on his long history of brutality toward women. The district judge explained that Mr. Swan's prior violence was "the most eye-catching aspect" of his criminal history and that it contributed to the length of Mr. Swan's sentence. ROA Vol. V at 349. However, contrary to Mr. Swan's contention, the district court did not rely on unproven allegations of domestic violence. Despite the district judge's discretion to consider unadjudicated conduct described in the PSR, he largely declined to do so. *See id.* at 325 ("I am very hesitant to take into account unadjudicated conduct [barring] extraordinary circumstances that are not present here . . . ."); *see also United States v. Rodriguez-Felix*, 450 F.3d 1117, 1131 (10th Cir. 2006) ("[W]e have routinely permitted a district court to enhance a defendant's sentence using uncharged conduct proven to the court by a preponderance of the evidence."). Instead, the district judge carefully distinguished the unadjudicated allegations from conduct that resulted in a conviction, considering only the latter for purposes of sentencing Mr. Swan. The one exception was an unadjudicated domestic violence incident leading to the crime of conviction, which the district court considered only after determining that the police reports describing the victim's injuries were supported by "ample indicia of trustworthiness." *Id.* at 324. And because the district court carefully considered whether this unadjudicated conduct was supported by sufficient evidence, we disagree with Mr. Swan's characterization of this incident as an "unproven allegation." *See Rodriguez-Felix*, 450 F.3d at 1131 (noting the district court's discretion "to enhance a defendant's

16

sentence using uncharged conduct proven to the court by a preponderance of the evidence").

Relying on *United States v. Allen*, 488 F.3d 1244 (10th Cir. 2007), Mr. Swan emphasizes that his history of domestic violence is too unrelated from his conduct of possessing ammunition, making his 120-month sentence substantively unreasonable. In *Allen*, we held that a district court abused its discretion by imposing a sentence that effectively punished the defendant for "attempted criminal sexual abuse or solicitation of murder, when his crime of conviction was sale of methamphetamine." *Id.* at 1253. Federal agents were investigating the defendant based on statements he made about his desire to kidnap, rape, and murder young girls. *Id.* at 1245–46. Although agents discovered photos of missing-children posters and stories he wrote about raping young girls at the defendant's home, he was arrested and charged only for distributing methamphetamine. *Id.* at 1248. As a result, we concluded the district court gave excessive weight to the defendant's uncharged actions that were unrelated to his drug offense. *Id.* at 1259.

Mr. Swan's sentence is different from the one imposed in *Allen* because Mr. Swan's repeated instances of violence are not so unrelated to his offense of ammunition possession such that the district court effectively sentenced him for a different and more serious crime. And the district court limited its consideration to adjudicated incidents, with one exception. Indeed, we have repeatedly concluded that a history of domestic violence—which shows a disregard for the safety of others— may support an upward variance in a felon-in-possession case. *See United States v.*

17

*Lucero*, 130 F.4th 877, 884, 887–88 (10th Cir. 2025) (finding no error where the sentencing court imposed an upward variance because the defendant, "despite being convicted of multiple offenses, continued to commit crimes, including crimes with weapons and crimes against women" (citation and internal quotation marks omitted)); *United States v. Kaspereit*, 994 F.3d 1202, 1215 (10th Cir. 2021) (finding no abuse of discretion where the district court applied an upward variance in a firearm-possession case in part because the defendant's pattern of domestic violence "posed a significant risk to the safety of others"); *United States v. Rogers*, 371 F.3d 1225, 1232 (10th Cir. 2004) ("[A] person who has previously committed domestic violence and thereafter possesses a weapon is reckless with respect to the risk that he might use the weapon as a means to inflict intentional physical force.").

Finally, the district court's consideration of Mr. Swan's criminal history was not limited to his previous instances of domestic violence. The district judge also noted that Mr. Swan's long history of felony convictions—including multiple felon-in-possession convictions—suggested "a strong element of lawlessness in Mr. Swan's approach to living day-to-day life." ROA Vol. V at 350. And the judge noted that he was "aware of nothing other than incapacitation that can make that stop or interrupt that course of conduct that goes back a good many years." *Id.* at 351. We have previously upheld similar reasoning supporting a major variance to a defendant's Guidelines range. *United States v. Mateo*, 471 F.3d 1162, 1170 (10th Cir. 2006) (holding the district court did not abuse its discretion in imposing a 99-month upward variance because the defendant's criminal history showed a "demonstrated

18

penchant for criminality"); *United States v. Proffit*, 304 F.3d 1001, 1011–12 (10th Cir. 2002) (noting that the defendant's repeated offenses committing the same or similar crimes warranted a higher sentence because of the defendant's potential for recidivism).

### 3.    Unwarranted Sentencing Disparities

Mr. Swan then argues that the district court failed to consider the potential for unwarranted sentencing disparities between Mr. Swan and other similarly situated defendants. Section 3553(a) "requires sentencing courts to consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Crosby*, 119 F.4th at 1251 (quoting § 3553(a)(6)).

We have "previously suggested that when a major variance is at play, the district court proclaims a substantively reasonable sentence when it considers comparative data regarding the degree of a defendant's mens rea and a thorough survey of sentences entered by other federal courts for similar conduct." *Id.* (internal quotation marks omitted). Although statistics from the U.S. Sentencing Commission's Judiciary Sentencing Information ("JSIN") platform are relevant to whether a sentence threatens to create unwarranted disparities, "we do not require district courts to consult Sentencing Commission data before imposing a sentence, nor do we require district courts to follow national statistics when imposing a sentence." *Guevara-Lopez*, 147 F.4th at 1188. Indeed, we have stated the "general rule that when a court considers what the guidelines sentence (or sentencing range)

19

is, it necessarily considers whether there is a disparity between the defendant's sentence and the sentences imposed on others for the same offense." *United States v. Gantt*, 679 F.3d 1240, 1248–49 (10th Cir. 2012).

Here, Mr. Swan asserts that he provided examples of defendants who had received lower sentences than he, but that the district court failed to consider them. At Mr. Swan's sentencing hearing, he listed the names of eight defendants who had been sentenced in the Western District of Oklahoma, along with the length of each defendant's sentence. Mr. Swan provided no additional information suggesting how the eight defendants were similarly situated to him. In fact, for six of the eight examples Mr. Swan provided, he did not even state the offense for which the defendant was convicted. Mr. Swan relies in part on our decision in *Guevara-Lopez*, where we held that the district court erred by only cursorily addressing a sentencing disparity issue that the defendant had raised. *See* 147 F.4th at 1184–86. In that case, however, the defendant had narrowed the statistics by the type of offense, criminal history category, and total offense level to show that he was the only defendant nationwide with these characteristics to receive an upward variance in a period of five years. *Id.* at 1185–86. In contrast, Mr. Swan focused only on defendants sentenced in the Western District of Oklahoma, rather than pointing to potential nationwide disparities, and he did not provide any information suggesting the eight defendants were similar to him in any way.

Although the district court did not specifically discuss the need to avoid unwarranted disparities, the district judge correctly calculated Mr. Swan's Guidelines

20

range and sufficiently explained the need for a higher sentence given Mr. Swan's history and characteristics. The district judge recognized that he was imposing a high sentence, especially in light of the nature of Mr. Swan's offense, but he walked through Mr. Swan's prior conduct and exercised his discretion to impose a 120-month sentence based on multiple § 3553(a) factors. *See United States v. Kelley*, 359 F.3d 1302, 1305 (10th Cir. 2004) ("[W]e have made it quite clear that the sentencing court is not required to consider individually each factor listed in § 3553(a) before issuing a sentence."); *Gantt*, 679 F.3d at 1248–49 (holding that the district court did not err by failing to explicitly discuss the need to avoid unwarranted sentencing disparities because it correctly calculated the defendant's Guidelines' range yet decided to impose a sentence outside that range). Under the facts of Mr. Swan's case, the district court's sentencing decision "falls within the realm of . . . rationally available choices." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007).

### III.   CONCLUSION

For these reasons, we AFFIRM Mr. Swan's conviction and sentence.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

21